BURGESS *v.* STOWE.

1. Personal Injuries—Elevators — Negligence and Contributory Negligence—Questions for Jury.
    Plaintiff, being in defendant's store on business, went to an open elevator shaft, where defendant raised the gate, and, stepping back, said in a louder tone than usual, "Elevator!" for the purpose of warning people in the building that he was about to use it. Plaintiff, thinking it an invitation to enter, stepped into the shaft, and fell. Whether or not the shaft was well lighted was disputed. *Held*, that it was right to submit to the jury the questions of negligence and contributory negligence.

2. Same—Defendant's Intent—Invitation to Enter Elevator.
    The defendant's intent or purpose in raising the gate and calling out "Elevator!" would not relieve him from liability, since it was competent for the jury to find that an ordinarily prudent man would have apprehended that it might be regarded as an invitation to enter the elevator.

3. Same—Instructions—Cause of Injury.
    A charge that plaintiff could not recover unless he received his injury in acting upon the invitation of defendant to enter the elevator rendered it unnecessary to charge that he could not recover because of the defective construction of the elevator or shaft, or for defendant's lack of skill in managing it.

4. Same—Contributory Negligence.
    Where defendant invited plaintiff to enter an elevator, the

latter was not bound to exercise a high degree of care to ascertain whether the elevator car was in the shaft.

5. TRIAL—ARGUMENTS OF COUNSEL—EFFECT OF VERDICT.

A remark by plaintiff's counsel in his argument to the jury, that they need not worry much about the verdict against the defendant, was not an invitation to the jury to consider a suggestion implied in an excluded question asked of defendant as to whether he was protected by accident insurance.

6. ELEVATORS—CARE REQUIRED IN OPERATION.

The owner of a building, in operating an elevator, is not "bound to exercise the highest degree of care and diligence of a cautious person, so far as human care and foresight can go;" he is only bound to use the care required of an ordinarily prudent person under the circumstances.

Error to Kent; Perkins, J. Submitted May 14, 1903. (Docket No. 73.) Decided July 14, 1903.

Case by Harry W. Burgess against W. Arthur Stowe for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*Butterfield & Keeney,* for appellant.

*H. B. Fallass,* for appellee.

CARPENTER, J. This is a suit brought to recover damages for personal injuries. Plaintiff recovered in the court below. Defendant asks this court to reverse that judgment on the ground that the testimony did not make a case for the consideration of the jury, and upon other grounds, which, as far as needful, will be discussed in this opinion.

1. Did the court err in submitting the case to the jury? Defendant contends that there was no evidence of his negligence, and that plaintiff was, as a matter of law, guilty of contributory negligence. The determination of this question requires an examination of the plaintiff's testimony.

Plaintiff was a newspaper publisher, and defendant was engaged in the business of selling paper at his store in

Grand Rapids. In the forenoon of November 14, 1901, plaintiff visited defendant's store for the purpose of examining and purchasing a supply of paper. The paper which he wished to examine was on one of the upper floors in defendant's store. One of the means of reaching said floor was an elevator. This elevator ran in an open shaft, extending from the top of the building to the basement. The opening on the ground floor was six feet high and five feet and one inch wide. It was guarded by two doors, which were generally kept open, and a gate made of slats, which was about three feet high, and of the same width as the opening. One desiring to enter the elevator raised this gate to the top of the opening, and passed under it into the elevator. The elevator was used for transporting both freight and passengers. No one was especially charged with the duty of guarding or operating it. Any one of many employés of defendant operated it, as occasion demanded. The operator controlled its movements by means of a perpendicular cable, passing through a corner of the elevator, and extending from the top to the bottom of the shaft. In the course of the conversation (which occurred on the ground floor of defendant's store) between the plaintiff and the defendant respecting the proposed sale of paper, defendant suggested that both he and the plaintiff go upstairs and examine said paper. Upon this being assented to, defendant led the way to the elevator. The doors were open and the gate down. Defendant raised the gate, stepped back, and in a louder tone than before said "Elevator!" Plaintiff, supposing this to be an invitation to enter the elevator, stepped forward, and fell down the elevator shaft, and received the injuries complained of. The testimony makes it quite clear that defendant's purpose in raising the gate was to enable him to reach the cable which controlled the car, which, as a matter of fact, was on some floor above that upon which he and plaintiff stood; that he spoke the word "Elevator!" as he did, in accordance with the custom in his store, as a warning to all who might hear him that he proposed to

use the elevator, and not as an invitation to plaintiff to enter the same.

There is some dispute as to whether or not the shaft was well lighted; plaintiff saying that the place was quite dark, while defendant's testimony indicates that it was quite light. We think it clear, however, that, had plaintiff been called upon to give particular attention to where he was stepping, he could not have failed to see that the elevator was not before him.

To us it seems clear that the jury were authorized by this testimony to find that the action of the defendant amounted to an invitation to the plaintiff to step forward into this shaft, and that in acting under this invitation plaintiff was not guilty of contributory negligence. Defendant has called our attention to a number of cases in which it has been held that a person injured by falling down an elevator shaft or into an open excavation cannot recover. We shall not attempt to discuss these cases. All of them are, in our opinion, inapplicable. In those cases the injured party was not, as in this case he was, acting under what he had a right to believe was the invitation of the defendant. This important circumstance not only created a duty on the part of the defendant, but had a very important bearing in limiting the obligation of the plaintiff to care for himself. Plaintiff certainly was not under the same obligation to guard against dangers that he would have been had no invitation been extended. We think, therefore, that the trial court did not err in refusing to direct a verdict for the defendant.

2. It is claimed that the court erred in refusing to instruct the jury:

(a) "If you find that Mr. Stowe, upon raising the gate, called 'Elevator !' in a loud tone of voice, and that this was with the intent or purpose on his part to sound a warning to any one above who might be using or about to use the elevator at that time, then such act on his part would not be negligence."

This was not error. Plaintiff was with defendant, and

it was competent for the jury to find that an ordinarily prudent man would have apprehended that raising the gate and shouting " Elevator ! " might be accepted as an invitation to step forward. Defendant's liability in this case does not depend entirely upon his intent or purpose, as assumed in the above request.

(b) It was not error to refuse defendant's request that there could be no recovery against the defendant because of the supposed defective or faulty construction of the elevator car or shaft, or because Mr. Stowe was without skill in the management of the elevator. The charge of the court made it clear to the jury that the plaintiff could not recover unless he received his injury in acting upon the invitation of defendant. This clearly meant that there could be no recovery on account of defendant's want of skill, or because the elevator or some part of it was defective. Cases might arise in which it would be the duty of the court to give such requests in order to make clear the issue presented to the jury. This, however, is not such a case.

(c) Nor was it error to refuse to charge, as requested by defendant:

"If on the morning of November 14th it was light enough at the elevator entrance so that Mr. Burgess could have seen that the elevator car was not in the shaft, and he did not see or notice that it was not there merely because he did not look, then I charge you that his failure to use his eyes was contributory negligence, and he is not entitled to recover."

Under the circumstances of this case, it was competent for the jury to decide that the plaintiff, acting under the invitation of the defendant, was not bound to exercise the high degree of care required in the foregoing request.

3. At the beginning of his closing argument to the jury, plaintiff's counsel said:

"I just want to say to you, you don't have to worry much about the verdict against Mr. Stowe."

It is contended by defendant's counsel that this was an

invitation to the jury to take into consideration the suggestion implied in a question asked of defendant and excluded by the court as to whether he was protected by insurance against liability for plaintiff's damages.    Plaintiff's counsel denies that he had any such purpose in making this statement.    The words themselves do not naturally convey the thought that the jury are asked to be governed by the excluded testimony.    The natural construction of the words is that the jury were advised not to concern themselves about the consequences of their verdict against defendant, and this is proper advice.    There must have been some peculiarity in the way of speaking these words, if they conveyed the impression complained of. Defendant's counsel took no step to put evidence of that peculiarity, if there was such a peculiarity, on the record. He did not see fit to call the matter to the attention of the court until after the jury had retired to consider of their verdict.    Under these circumstances, we do not think that he can ask us to find in these words the meaning complained of.

4. The court, in charging the jury, said:

" I instruct you that a person operating an elevator, in lifting a passenger from one floor to another in a building, is to be treated as a carrier of passengers, and the same duties rest upon him as on a carrier of passengers by railways.    Though not insurers of the absolute safety of the passenger, the owner or operator of an elevator is bound to exercise the highest degree of care and diligence of a cautious person, so far as human care and foresight can go, and, in the absence of contributory negligence on the part of the person injured, is responsible for any injury occasioned because of any neglect against which a reasonable human prudence might have guarded.    *    *    *

" To determine whether the defendant, on the day in question, was guilty of negligence, you will ask yourselves, and answer:    Did he exercise the highest degree of care, under the circumstances of this case, consistent with the possibility of injury to the plaintiff, taking into consideration all the facts and circumstances you may find to be true, under the evidence in this case bearing upon this subject?    *    *    *

134 MICH.—14.

"Did the conduct of the defendant amount to an invitation, as the plaintiff claims, or is the contrary true, as the defendant claims, taking into consideration the degree of care the defendant was bound to exercise toward the plaintiff, viz., the highest degree of care, as I have instructed you? * * *

"These parties owed reciprocal duties toward each other,—the plaintiff to use ordinary care to avoid any injury to himself, and the defendant to exercse the highest degree of care to prevent any injury to the plaintiff."

We are referred to several decisions which sustain the charge. See *Treadwell* v. *Whittier*, 80 Cal. 574 (22 Pac. 266, 5 L. R. A. 498, 13 Am. St. Rep. 175); *Mitchell* v. *Marker*, 62 Fed. 139, 10 C. C. A. 306, 25 L. R. A. 33; *Goodsell* v. *Taylor*, 41 Minn. 207 (42 N. W. 873, 4 L. R. A. 673, 16 Am. St. Rep. 700); *Southern Bldg. & Loan Ass'n* v. *Lawson*, 97 Tenn. 367 (37 S. W. 86, 56 Am. St. Rep. 804).

In our judgment, however, the correct rule, and a rule more in harmony with the decisions in this State (see *Michigan Central R. Co.* v. *Coleman*, 28 Mich. 440; *Grand Rapids, etc., R. Co.* v. *Huntley*, 38 Mich. 537 (31 Am. Rep. 321); *Hall* v. *Murdock*, 114 Mich. 233 (72 N. W. 150), is stated in the case of *Griffen* v. *Manice*, 166 N. Y. 188 (59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630). We quote from that opinion:

"If the charge of the trial court is to be sustained, we must hold that the maintenance and operation of an elevator form an exception to the general standard of care imposed by the law upon the owners and occupants of real property. We see no reason for making this exception. The operation of an elevator, no doubt, involves danger, and if accident occurs it may result in most serious consequences. It is not, however, the only dangerous appliance used in modern buildings. The boiler which furnishes steam heat, the conductors through which electric light is furnished, may at times be the cause of serious accidents. An open hatchway is equally dangerous. Yet it has never been attempted to impose upon the owner of a building any greater responsibility as to these matters than that of exercising reasonable care.

It is very probable that, in the advance of the mechanical arts, many new appliances will be introduced into buildings which will involve danger. It seems to me impracticable to distinguish, as to the measure of the owner's duty, between these appliances, and that such an attempt would involve great confusion in the law. I do not wish to be misunderstood. In the exercise of the same degree of care different degrees of precaution may be necessary. The same man, with equal prudence, will leave an article of furniture unguarded in his house, and carefully secrete or lock up jewelry or money. So, the more dangerous an appliance may be the more attention may be requisite. If the fair purport of the charge of the court was only that the care should be commensurate with the danger, it might not be objectionable. The charge, however, goes far beyond this. The utmost human care and foresight would require the owner of a building to use the most modern and improved form of elevator, the latest successful mechanical device, and the most skillful operators. * * * But common knowledge informs us that such a rule would be ˙unreasonable, applied to elevators in ordinary buildings. There are elevators not only in great office buildings and hotels, but also in small buildings, and even in many private houses. Where there is little traffic, the duty of operating the elevator is at times imposed on an employé or servant with other work to perform. To require in all these cases (and I do not see how it is possible to distinguish between them on the law) the same measure of duty that is imposed on a railroad company or common carrier would be going too far. I think sufficient security is afforded the public when owners or occupants of a building are required to use reasonable care in the character of the appliance they provide and in its maintenance and operation. The stairways are always open to those who deem this degree of diligence inadequate for their protection."

In our judgment, therefore, the court erred in charging the jury that defendant was "bound to exercise the highest degree of care and diligence of a cautious person, so far as human care and foresight can go." Defendant was bound to use the care required of an ordinarily prudent person under the circumstances. This, morally speaking, is a high degree of care, because an ordinarily prudent

person, under those circumstances, would exercise such care; but there did not rest upon him the extraordinary obligation required by the charge.

We find no reversible error in the other assignments relied upon.

For the error pointed out, the judgment will be reversed, and a new trial granted.

The other Justices concurred.