# EUGENE MURPHY *v.* MAUI PUBLISHING COMPANY, LIMITED, A DOMESTIC CORPORATION.

## No. 1023.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

HON. S. B. KEMP, JUDGE.

ARGUED JUNE 12, 1917.                    DECIDED JULY 5, 1917.

ROBERTSON, C.J., QUARLES AND COKE, JJ.

EVIDENCE—*publication of libel.*

The publication of a libelous article in defendant's newspaper is sufficiently shown by production of a copy of the newspaper containing the libelous article and by evidence that the morning following the issue of such newspaper a third party called plaintiff's attention to the article and that ten or twelve persons later spoke to him about it where an inspection of the article shows that no one could tell that it referred to the plaintiff without reading the body of the article.

LIBEL AND SLANDER—*attorney—misconduct.*

An article printed in a newspaper to the effect that an affidavit had been filed in a civil case stating that plaintiff, an attorney, had settled a case without the knowledge or consent of his client imputes malpractice or professional misconduct to the plaintiff and is libelous *per se.*

SAME—*presumption of malice.*

The law presumes malice from the publication of a libel that is actionable *per se* and it is not necessary to prove actual malice.

SAME—*privileged communication.*

The privilege extended to a litigant to charge in a judicial proceeding libelous matter pertinent to the issues therein does not extend to third parties or the press. The republication of libelous matter contained in the pleadings or other papers in civil actions prior to hearing is an adoption and indorsement of such libelous matter by the one republishing it and such republication is not privileged.

APPEAL AND ERROR—*exceptions—point not raised in trial court.*

On exceptions the appellate court will not consider the question of excessive damages when that question was not raised in the trial court by exception or by motion for a new trial based on the ground that the damages awarded are excessive.

OPINION OF THE COURT BY QUARLES, J.

This action was commenced by the plaintiff against the defendant, a domestic corporation, to recover damages by reason of an alleged libel published in the Maui News, a newspaper published by defendant, the alleged libel being as follows:

"Didn't know case had been settled. Hawaiian litigant wants suit reopened—says his attorney acted without his knowledge.

"Application for a motion to set aside a stipulation in the case of J. W. Ambrose vs. Kealakaa, was granted yesterday by Judge Edings, and the motion will be heard on Saturday, February 17.

"The proceeding, which was instituted by Attorney E. R. Bevins, contemplates the re-opening of the case in question which was settled by agreement out of court some months ago. The petition alleges that the settlement was made by Eugene Murphy, then attorney for Kealakaa, without his client's knowledge or consent, and to his subsequent. The case involves a valuable piece of beach property at Lahaina claimed as a part of the Bishop Estate, and also by Kealakaa claims it by adverse possession."

The defendant plead the general issue and the cause was tried by the court jury waived. At the conclusion of plaintiff's evidence the defendant moved for a nonsuit upon various grounds, which motion was denied. The court rendered its decision in favor of the plaintiff and awarded his damages at the sum of one thousand dollars, for which judgment was entered. The cause comes before us upon two exceptions, one to the refusal of the trial court to grant

the motion for a nonsuit and the other to the decision in favor of the plaintiff. Both exceptions raise the same questions.

The evidence shows that the defendant publishes a newspaper called the Maui News which has a weekly circulation of more than six hundred and is circulated largely on the island of Maui. where plaintiff resides and is engaged in practice as an attorney at law, and also in the other islands of the Territory; that the issue of February 9, 1917, in which was published the alleged libelous article, was a special edition, of which about six hundred and fifty copies were issued and circulated; that the article in question was written by Mr. Cooper, the manager of the defendant and editor of its newspaper; that he wrote the article in duplicate, sending one copy to the evening Star-Bulletin, a daily paper published in Honolulu with a circulation of between six and seven thousand, and which article was published in the last named paper in its issue of February 9, 1917; that the attention of the plaintiff was called to the article in question on Saturday morning, the day after its publication, by one Leon Straus, and that ten or twelve other persons spoke to the plaintiff about the article; that this libelous article has not, so far as plaintiff knows, injured his business, but it annoyed him and prevented him from eating normally for three or four days. The following facts led up to the publication of the article in question: The plaintiff was employed by one Kealakaa, the defendant in an action of ejectment instituted by J. W. Ambrose as plaintiff; this action was continued on account of the absence of the attorneys for the plaintiff at the March and June terms 1916 of the circuit court of the second judicial circuit, wherein said action was pending; at the October term 1916 the plaintiff advanced the cost money necessary to secure the attendance of a witness for the defendant from Hono-

lulu at the trial in Wailuku; the morning the case was set for trial the defendant, in the· presence of others, agreed with W. O. Smith, one of the attorneys for the plaintiff in the ejectment suit, to.a settlement of the case, the plaintiff to pay the costs, whereupon the defendant Kealakaa, W. O. Smith and others went to the office of the plaintiff and informed him that the case had been settled and was to be discontinued, the plaintiff to pay the costs including those incurred by the defendant; to this arrangement the plaintiff objected, insisting that he could win the case, but he finally acquiesced saying that the defendant had a right to agree to a settlement if he so desired; following this agreement a stipulation was prepared showing the terms of settlement, which plaintiff signed, the costs were paid and the cause discontinued.   The stipulation was not introduced in evidence and is not before us, nor is any reason shown why it was not introduced in evidence or its contents agreed to or shown.   After the expiration of the October term 1916 and on February 2, 1917, a motion to set aside the stipulation and discontinuance was prepared by E. R. Bevins, as attorney for Kealakaa, together with the affidavits of said Kealakaa and one Joseph Kekoa, to the effect that Kealakaa did not understand the English language and that at the settlement of the action of ejectment, the stipulation, which was in English, was not explained to Kealakaa in Hawaiian and he did not understand the same or agree thereto.   This motion came on to be heard on the 17th day of February, 1917, before the judge of the second judicial circuit, evidence was introduced pro and con and the motion was denied.   These facts were proven without dispute at the trial of the case at bar and it is thus seen that the statements contained in the motion and affidavits referred to were false.

We will now proceed to consider the several points urged on behalf of defendant: (1) The defendant contends that

there is no evidence to show that it published the alleged libel in that it was not proven at the trial that the alleged libelous article was read by any particular person. The appearance of the article in the copy of defendant's newspaper introduced in evidence and the evidence of Mr. Cooper show the printing of the article in question by defendant and the circulation of more than six hundred copies of defendant's newspaper containing the alleged libel. The evidence of the plaintiff that the article was called to his attention by Mr. Straus the morning following the printing of it and that ten or twelve persons spoke to him about the article is sufficient to show that the article was read by others. An inspection of the article would show that no one could tell from the headlines that it referred to plaintiff, and in order to do so it was necessary to read the body of the article. The evidence is sufficient to show the publication by the defendant.

(2) It is contended on behalf of the defendant that the alleged libelous words are not actionable in their natural and primary signification, not actionable *per se,* and that no special damage was shown, therefore the judgment should have been in favor of the defendant. The article referred to the plaintiff's professional conduct, affected him in his professional business, and imputed to him malpractice or professional misconduct. Section 2329 R. L., which relates to practicing attorneys, is as follows:

"Control of action; power to settle. The practitioners so licensed shall have control to judgment and execution, of all suits and defenses confided to them; provided, however, that no such practitioner shall have power to compromise, arbitrate or settle such matters confided to him, unless upon special authority in writing from his client."

To charge an attorney with settling a pending case without the knowledge or consent of his client is to charge him with professional misconduct, and where the charge is in

writing it is libelous *per se,* and it is not necessary to allege or prove special damages. "It is libelous to impute to any one holding an office that he has been guilty of improper conduct in that office, or has been actuated by wicked, corrupt or selfish motives, or is incompetent for the post. So it is libelous to impute to a member of any of the learned professions that he does not possess the technical knowledge necessary for the proper practice of such profession, or that he has been guilty of professional misconduct" - (Newell, Slander & Libel, 3 ed. p. 75, par. 42). See also *Atkinson* v. *Detroit Free Press,* 46 Mich. 341; *Cramer* v. *Riggs,* 17 Wend. 209; *Atwater* v. *Morning News Co.,* 67 Conn. 504; *Sillars v. Collier,* 151 Mass. 50; *Boydell* v. *Jones,* 4 M. & W. 446; *Secor* v. *Harris,* 18 Barb. 425; *Register Newspaper Co.* v. *Worten,* 111 S. W. (Ky.) 693; 25 Cyc. 333. When the natural and probable consequence of a printed libelous publication will injure one's professional reputation or cause him pecuniary loss, such publication is libelous *per se* (Newell, Slander & Libel, 3 ed. p. 217). A charge of malpractice or professional misconduct against a physician or attorney naturally tends to harm him in his profession and to deprive him of business by causing persons contemplating employing him to withhold their patronage from him. Naturally the extent of such loss is unknown to the injured party. The plaintiff in the case at bar says that he knows of no business he has lost by reason of the alleged libelous publication, but it is natural for a person contemplating employing a professional man, and deterred from so doing by reason of a charge of professional misconduct published against him, to refrain from going to him and telling him that he expected to employ him but did not do so because he saw that he had been charged with malpractice or professional misconduct. Delicacy naturally prevents one from approaching another under such circumstances. It is apparent that the tendency of the libelous

article in question here is to cause pecuniary loss to the plaintiff. Whether he is able to point out just what business he has lost by reason of it or not we hold that the libelous publication complained of is actionable without allegation and proof of special damage.

(3) The defendant contends "that there is not a scintilla of evidence in this case showing malice on the part of the defendant in the publication of said libel." The law presumes malice from the publication of a libel that is actionable *per se* and it is not necessary to prove actual malice (Newell, Slander & Libel, 3 ed., p. 217).

(4) It is next contended on behalf of the defendant that the publication of the libelous matter was privileged; that the same is a fair, true and impartial report of an affidavit filed in a judicial proceeding. It is well settled that a newspaper is privileged to publish a report in a judicial proceeding after a hearing therein, provided it gives a fair report of what took place. The privilege extended to a litigant or a witness or to counsel to state libelous matter pertinent to the issues in a judicial proceeding does not extend to third parties in civil cases, whether individuals or newspapers, as the public has no interest in a private controversy. "There is no rule of law which authorizes any but the parties interested to handle the files or publish the contents of their matters in litigation. The parties, and none but the parties, control them. One of the reasons why parties are privileged from suit for accusations made in their pleadings is that the pleadings are addressed to courts where the facts can be fairly tried, and to no other readers. If pleadings and other documents can be published to the world by any one who gets access to them, no more effectual way of doing mischief with impunity can be devised than filing papers containing false and scurrilous charges, and getting them printed as news. The public have no rights to any information on private suits till they come

up for public hearing or action in open court; and when any publication is made involving such matter they possess no privilege, and the publication must rest on either non-libelous character or truth to defend it. A suit thus brought with scandalous accusations may be discontinued without any attempt to try it, or on trial the case may easily fail of proof or probability. The law has never authorized any such mischief. It has been uniformly held that the public press occupies no better ground than private persons publishing the same libelous matter, and, so far as actual circulation is concerned, there can be no question which is more likely to spread them" (Newell, Slander & Libel, 3 ed., pp. 569, 570). See also 25 Cyc. 407; *Park* v. *Detroit Free Press Co.*, 72 Mich. 560; *Cowley v. Pulsifer,* 137 Mass. 392; *Meriwether* v. *Knapp & Co.,* 211 Mo. 199, 219; *Ilsley* v. *Sentinel Co.,* 133 Wis. 20; *Amer. Pub. Co.* v. *Gamble,* 115 Tenn. 663. In *Brown v. Globe Printing Co.,* 213 Mo. 611, the court, at page 643, quotes with approval from *Hotchkiss* v. *Oliphant,* 2 Hill 510, as follows: "The act of publication is an adoption of the original calumny, which must be defended in the same way as if invented by the defendant. The republication assumes and indorses the truth of the charge, and when called on by the aggrieved party, the publisher should be held strictly to proof. If he chooses to become the indorser and retailer of private scandal, without taking the trouble of inquiring into the truth of what he publishes, there is no ground for complaint if the law, which is as studious to protect the character as the property of the citizen, holds him to this responsibility. The rule is not only just and wise in itself, but if steadily and inflexibly adhered to and applied by courts and juries, will greatly tend to the promotion of truth, good morals and common decency on the part of the press, by inculcating caution and inquiry into the truth of charges against

private character before they are published and circulated throughout the community."

It follows that the libelous matter complained of is not privileged and as its truth was not established, but its falsity shown, the defendant was properly held liable.

Counsel for defendant complains that the judgment for one thousand dollars damages in favor of the plaintiff is excessive. The defendant did not make this ground the basis of an exception and there is nothing in the record showing that this point was called to the attention of the trial court by motion for a new trial or otherwise, hence this question is not before us for consideration (3 C. J. p. 944, §829). It is well settled that an exception must be sufficiently definite and specific to point out to the appellate court a point of law which was called to the attention of the trial court affecting the legality of its ruling, the trial court having had the opportunity to correct its ruling if erroneous (*Ripley & Davis v. Kapiolani Est.*, 22 Haw. 507; *Scott* v. *Kona Development Co.*, 21 Haw. 258, 263).

The exceptions are overruled.

*W. B. Pittman* (*Andrews & Pittman* on the brief) for plaintiff.

*Enos Vincent* (*D. H. Case* with him on the brief) for defendant.

### CONCURRING OPINION OF COKE, J.

In concurring in the majority opinion I do so mindful that in a government like ours, characterized by free institutions, the importance of a free press should not be underestimated. While the case at bar deals solely with the publication of libelous matter contained in the pleadings in a civil action prior to a hearing thereon, I deem it timely to draw attention to what I understand to be a relaxation to some extent of the rule announced when the same is ap-

plied to criminal proceedings. For instance, a report of an arrest on information gained from papers on file, when such report does not assume the guilt of the accused person and is not otherwise defamatory, is privileged. This policy of the law is recognized by Mr. Townshend in his work on Slander and Libel, 3d ed., p. 403, and in Newell's Slander and Libel, 3d ed., p. 664.