CURCURU v. PENINSULAR ELECTRIC LIGHT CO.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1919.)

No. 3198.

1. APPEAL AND ERROR ☞237(2)—ADMISSION OF EVIDENCE—WAIVER OF ERROR.

In an action against an electric company for death of an employé of a contractor, who in the course of his work on building being constructed came in contact with a high tension wire and was killed, error in the tentative admission of evidence that the contractor had insured the lives of his employés, including deceased, and that a claim had been filed under the Michigan Workmen's Compensation Act and suspended, was waiv-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

258 F.—50

ed in appellate court, where there was no motion to strike such testimony and no instruction was requested that it be disregarded.

2. APPEAL AND ERROR ⊚⟹1053(4)—REVIEW—HARMLESS ERROR.

In an action against an electric company for the death of an employé of a contractor, who in the course of building operations came in contact with a high tension wire and was killed, the tentative admission of testimony that contractor had insured the lives of his employés pursuant to the Michigan Workmen's Compensation Act was harmless, if erroneous, where the court charged that the fact that the contractor had insured the lives of its employés was not one on which finding could be based.

3. ELECTRICITY ⊚⟹14(1)—HIGH TENSION WIRE—DUTY OF CONTRACTOR.

Where an electric company constructed a high tension line, which wires carried a deadly current of electricity, the deadly nature of such agency imposes on it duties of care.

4. TRIAL ⊚⟹248—ACTIONS—ABSTRACT INSTRUCTIONS.

Where an employé of a contractor, in the course of constructing buildings near a high tension electric wire, met his death when he touched the wires with his hands, *held* that, in an action against the company, a charge that the electric company was not bound to provide for absolute safety of one coming in contact with the wires, but was only bound to use reasonable care, depending on the circumstances, was not erroneous, though it gave the jury only an abstract rule.

In Error to the District Court of the United States for the Southern Division of the Eastern District of Michigan; John M. Killits and Arthur J. Tuttle, Judges.

Action by Gaetano Curcuru, administrator of the estate of Vincenzo Curcuru, deceased, against the Peninsular Electric Light Company, a Michigan corporation. There was a judgment for defendant, and plaintiff brings error. Affirmed.

Jos. T. Schiappacasse, of Detroit, Mich., for plaintiff in error.

James V. Oxtoby, of Detroit, Mich., for defendant in error.

Before KNAPPEN and DENISON, Circuit Judges, and WALTER EVANS, District Judge.

WALTER EVANS, District Judge. Vincenzo Curcuru, 25 years old, and a subject of the king of Italy, came to the United States and settled in Detroit, Mich., in 1912. At the time of his death he was employed by Jackson & Maurice Company, a firm which was constructing a two-story cement building on a lot on the northwest corner of North Grand boulevard and Hastings street in that city. While thus employed, on the 28th day of March, 1914, Curcuru was instantly killed upon coming in too close proximity to the electric wires of the defendant in error, and which wires, at least 10 years before that date, it had erected, and which it had ever since maintained and operated. The poles on which its wires were strung stood in an alley and in a line which ran near the walls of the building which Jackson & Maurice Company were constructing. On April 7, 1915, the plaintiff was duly qualified as administrator of the decedent's estate, and later instituted this action in the court below for the recovery of $25,000 for pecuniary losses and damages alleged to have resulted from the death of his intestate.

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The declaration contains two counts, but it is conceded that the second count has become of no further importance. The first count stated the basis of the plaintiff's claim to recover the compensation and damages sought. It averred that the defendant's poles supporting its wires were set in the ground on the north side of the alley, the alignment of the poles running east and west and up to where it crosses Hastings street; that for over five years prior to March 28, 1914, these poles supported ten wires attached to glass insulators attached to cross-arms at or near the tops of the poles; and that for over five years previously one of the poles was located on the northwest corner of the alley referred to and Hastings street. This alley was a public highway, and had been known as such for ten years previously. One of the defendant's poles was located on the north side of the public alley, about 100 feet west of the pole on Hastings street, and all of defendant's line of poles extended about 30 or 40 feet above the ground. Prior to March 28, 1914, and on that date there was a cross-arm supported by a brace and having attached to it five glass insulators supporting the wires, and prior to that date also another cross-arm was attached to said pole in a horizontal direction about 2 feet below the first cross-arm, which was supported by a brace attached to the pole, and attached to those cross-arms were five glass insulators supporting as many wires.

It is further averred that on March 28, 1914, it became and was necessary for the employés of the Jackson & Maurice Company to work in close proximity to the described poles and wires of the defendant, which, it was averred, was well known to the defendant. Plaintiff further averred that on and long prior to the 28th of March, 1914, the defendant was supplying electrical energy to divers persons, and that said electrical energy passed through the wires on the poles referred to, and which wires were known as high tension wires, and which electrical energy was of deadly potency, and that surrounding said high tension wires there was a deadly magnetic field.

The declaration then averred (probably quite as much matters of legal conclusion as of fact) that it then and there became and was the duty of the defendant, first, not to construct or place said high tension wires over or upon the property line of the lot where the employés of said Jackson & Maurice Company had to go in the performance of their duties; second, to construct and equip said high tension wires at such a distance from the property line of said lot that it would be impossible for the employés of that firm to be injured; third, to properly and safely insulate said high tension wires, so as to render impossible discharges of electrical energy at points where the employés of that firm had to go in the discharge of their duties; fourth, to properly and safely insulate said high tension wires, so that the employés referred to, in coming in contact with or getting in the magnetic field, would not receive an electrical shock; fifth, to properly and at reasonable intervals inspect said high tension wires; sixth, to construct and maintain said high tension wires at the point where the accident occurred, so as to render it safe for the employés of the firm referred to to perform their duties; seventh, not to use high tension wires for

the transmission of its electrical energy in such a way as to render it dangerous to the employés of Jackson & Maurice Company in the discharge of their duties for that firm; and, eighth, to remove the pole located at the northwest corner of the intersection alley and Hastings street to a sufficient distance to prevent the wires on top of same from being unsafe for the employés of that firm.

Having alleged these to be the duties of the defendant, the plaintiff in his declaration further alleged that defendant had failed and neglected to perform any one of those duties, and this failure to perform those alleged duties is the negligence which is alleged to have brought about the death of the plaintiff's intestate, who, it is averred, while leveling the concrete on the top of the second story of the building, and performing the work incident to his employment, and while then exercising due care and without any fault on his part, came within the deadly magnetic field of the high tension wires of defendant, which had negligently and unlawfully been constructed and maintained over the top of said pole, and that the deceased did then and there receive an electrical shock from said wires of terrible potency, and was thereby electrocuted and killed, all on account of said electrical shock, and, having fallen to the floor of the second story of said building, was burned and lacerated in flesh, deadened in nerves, and death ensued.

Plaintiff averred that the death of said decedent was brought about by the negligent and unlawful conduct of the defendant in constructing, maintaining, and utilizing the high tension wires at a point dangerously near the place where plaintiff's intestate was compelled to go in the due performance of his duties. Plaintiff alleged that the decedent had left as heirs and next of kin his wife, 21 years of age, and his father and mother, each 65 years of age, and both of whom were dependent on decedent's intestate for support. It is claimed that the cause of action for negligence imputed to the defendant vested in the decedent's estate and in its administrator, and that the deceased contributed $25 monthly to the support of his wife and a like amount to each of his parents, and would have continued to do so during their expectancy of life. Plaintiff finally averred that by reason of these facts, and the injury thereby done, the right of action to recover therefor vested in the plaintiff's administrator, and he prays judgment for the sum of $25,000 as damages therefor.

The defendant demanded a trial of the matters set forth in the plaintiff's declaration, thereby putting in issue the truth of each and all of the averments therein made. Defendant also gave notice that it would give in evidence under the general issue, and would insist in its defense upon various matters, only two of which are necessary to be noticed, viz., first, that at the time of the injury the decedent was in the service of Jackson & Maurice Company, who were his employers, that his death resulted from a personal injury received by him on March 28, 1914, while in their service, and that the injury thus causing his death arose out of and in the course of that employment; and, second, that consequently, and upon other facts stated in the notice, the case came within the provisions of the act known as the

Michigan Workmen's Compensation Law (Pub. Acts Mich. 1912 [Ex. Sess.] No. 10), one of the purposes of which is to restrict dependents of a deceased employé who has not exercised the option given him by said act, to the remedy and to the compensation provided for therein, with the right to the employer (in the present case, Jackson & Maurice Company) if the compensation be paid under said act, to enforce, for its benefit, any liability for insurance, but that plaintiff, as the administrator of the decedent's estate, had no right to recover, inasmuch as the only person entitled to do so was the widow of the deceased, and that, if she recovered compensation from Jackson & Maurice Company, the latter or defendant could look to the insurance company named in the notice.

As these defenses were developed and relied upon at the trial, they were to the effect: (1) That since the deceased had elected to remain under the protection of the act, his administrator had no right to elect to sue the defendant, the only remedy being for the widow to claim compensation from the employer under the act, and that the only liability of defendant would be liability over to the insurance company which had indemnified the employer; and (2) that, even if the deceased's representatives had the right to proceed against either the employer or the defendant, the option had been irrevocably exercised by instituting proceedings (afterwards discontinued) under the Workmen's Compensation Act. After reserving these questions until the end of the trial, the court then held that the proceedings initiated under the Compensation Act did not constitute an irrevocable election, and that the administrator could maintain an action under the Death Act. The issues of negligence and contributory negligence were submitted to the jury. The trial resulted in a verdict for the defendant, and the case was brought here.

The plaintiff, as grounds for reversal, insists upon three assignments of error—two of them relating to the admission of testimony, and the other to one phase of the charge to the jury. We shall deal with them in that order, though the two assignments (Nos. 2 and 3) relating to this subject will be considered together.

[1, 2] Upon these assignments it is insisted that the trial court erred in admitting testimony relative to the insurance which had been taken out by the Jackson & Maurice Company upon the lives of their employés, pursuant to the Compensation Act, whereby that act had become applicable and its restrictions took effect, and in admitting testimony that a claim had been filed under the Compensation Act, and then suspended. All of this testimony, however, was offered by the defendant (and apparently in good faith) pursuant to the notice of the defenses it would make and the testimony it would offer at the trial. Objection was made by the plaintiff to the admission of this testimony, and the court said:

"We might proceed to other testimony, and come to this question afterwards. The testimony so far may stand, subject to a motion to strike out."

No motion of that character was made by the plaintiff. In this situation it seems to the court that, the testimony having been offered during the trial pursuant to the defendant's notice, it was at least tenta-

tively admissible, though subject to be stricken out upon plaintiff's motion after the conclusion of all the testimony, and especially if it should then appear to the court that it ought not to affect the jury's verdict. No such motion having been made, it would not be fair, either to the trial court or to the defendant, to hold otherwise than that plaintiff by that failure waived his objections. Besides, we are satisfied that no prejudice could reasonably be supposed to have come to the plaintiff from the failure to exclude this testimony, especially as the charge made it clear enough to the jury that the fact that Jackson & Maurice Company had insured the lives of its employés was not one of the grounds upon which their finding could be based.

If plaintiff apprehended the possibility of prejudice in fact through the introduction of evidence showing a claim of the existence of another remedy, and the possibility that jurors would, for that reason, be less disposed to give plaintiff a verdict in the present suit, it was open to him to move to strike out the evidence, or to ask instruction that it be disregarded. But, in the absence of such motion or request for instruction, we think the court did not err in tentatively admitting the testimony, from the fact that it failed, on its own initiative, to either formally order the testimony stricken out or to expressly instruct the jury to disregard it.

[3, 4] The other assignment relates to that part of the charge to the jury wherein the learned trial judge said:

"It was not required of the defendant here to provide for the absolute safety of any one coming in contact with this wire, nor is it incumbent upon the defendant to exercise an extraordinary degree of care. Only is it incumbent upon the defendant to exercise reasonable care with reference to those wires. What reasonable care in any given case is depends peculiarly upon the circumstances that attend the particular case. Reasonable care will vary with the change of circumstances and the fluctuation of conditions surrounding the premises. * * * And what would be reasonable care in a building in process of construction might be considered to have been extraordinary and unusual care on the part of the defendant, had there been no building there. So, in every instance, when the jury is called upon to determine whether reasonable care is being exercised or not, it must look to the circumstances that are peculiar at the exact time under examination to the conditions then in operation. Now, reasonable diligence is what was required of the defendant, and that is to be determined by the jury, by considering all the circumstances which the jury feels should have reasonably come to the defendant's knowledge."

At the outset of any discussion of the questions raised by the assignment of error based upon this part of the court's charge, it may be well clearly to recall that this is not an action by the representative of a deceased employé against his employer. There were no direct relations between defendant—a lighting company—and the plaintiff's intestate, who was in the employment of a firm which, under a contract with other outside parties, was constructing a building upon a lot near to or over a small part of which ran at least one of defendant's wires. But the presence there of the defendant's wires imposed certain very important duties upon the defendant, whose business was conducted through one of the most dangerous agencies known in nature, and plaintiff in his declaration charged defendant with neglecting those duties.

The testimony does not show that any one saw the deceased do the act which caused his death; but two, at least, of his fellow employés, who were at work near by, almost immediately afterwards saw what had occurred, and their testimony is in no way contradicted or called in question. One of them testified that when he "turned around he saw the deceased hanging on the wires," and the other testified that, "when he [the witness] turned around, he [the deceased] was hanging on the wire with both hands." Upon these uncontradicted and unqualified statements in the testimony, the inference almost inevitably must be that Curcuru's death was caused by his taking hold of a high tension wire with both hands, though whether deliberately or through some emergency is not clear. Whatever may have been the duties of the defendant in respect to those of its wires which ran near to or over a small section of the lot on which the cement building was being constructed by Jackson & Maurice Company, it could hardly be that defendant was under any duty to prevent the deceased from taking hold of its wires. It would seem to have obviously been the duty of any reasonably prudent man, even if he ventured near the wires, to abstain from putting his hands upon them when it might mean inevitable harm or even death itself.

The evidence tended to show that in November, 1913, defendant had in writing been notified by Jackson & Maurice Company that the building was soon to be erected, and its attention was therein called to the electrical situation on the lot, in view of the location of defendant's wires, and defendant was asked to make proper inspections and any necessary changes that might be required by the situation. The declaration shows that the wires were all insulated, and there is testimony tending to show that the defendant promptly attempted to meet the requirements of this notice, and supposed it had done so; but the testimony is undisputed that putting a hand on one of the defendant's insulated wires located near the building would almost inevitably bring instant death. The testimony also tended to show that plaintiff's intestate was a man of about 25 years of age, who had lived in Detroit 2 years, and that the witness who appeared to be nearest to him on the second floor of the building, where the deceased was working on March 28, 1914, did not notify him of the danger of touching the wires because the witness supposed the deceased knew it. It was no doubt assumed judicially and in every other way all through the trial that high tension electrified wires, though fully insulated (for waterproofing purposes), were and were generally known to be most dangerous and deadly when touched, and that every prudent person should avoid contact with them. This appears to be the situation the trial judge was called upon to meet in charging the jury.

The declaration having alleged and the testimony having shown that Vincenzo Curcuru was killed instantly, no cause of action therefor would have survived his death without the Michigan Death Act, which appears in the Compiled Laws of 1897 of that state as sections 10427 and 10428. This legislation provides a remedial proceeding in such conditions, and at the trial it was assumed that this law should control in this instance. No one now questions the propriety of that course. With this in mind, and stated generally, the question to be de-

termined is whether the defendant's duty to the deceased employé of another then engaged in building the house was to use "extraordinary care," or "the utmost degree of care," or "the highest degree of care" (if there be any material difference between these phrases), to prevent injury to the deceased under the facts shown, or was the obligation of the defendant such as the trial judge defined it to be in the part of his charge we have set forth? Very many authorities have been cited upon the one side and the other of this question, but while we need not state in detail our analysis of them, upon careful consideration we have concluded that the rule laid down by the court below was the correct one upon the authority of cases like Burgess v. Stowe, 134 Mich. 204, 211, 96 N. W. 29, Warren v. City Electric Ry. Co., 141 Mich. 300, 301, 104 N. W. 613, and Crowe v. Michigan, etc., R. R., 142 Mich. 692, 695, 106 N. W. 395.

We do not intend to hold that the duty to use some higher degree of care did not exist; and while we think it would have been right to give the charge which plaintiff requested, we see no reversible error in giving, instead, the definition which the court adopted. It is beyond all doubt true that the ordinarily and reasonably prudent man will use greater and greater care as the dangerous character of the situation increases; hence an instruction that reasonable care is to be judged by the circumstances of the case, and that what would be reasonable under some circumstances would be more than necessary under other conditions, or less than necessary in still another situation, is not necessarily in conflict with the idea that a high degree of care should be required here. The illustration given was to the effect that the same care which would have been reasonable and sufficient, if there had been no building in process of erection, might be insufficient where building operations like this were being carried on. Instead of giving to the jury a specific interpretation of the rule which might have been helpful, the trial judge gave the general and abstract rule. If the wires were so highly dangerous as is claimed, a jury, under this charge, must have understood that it should take into account this highly dangerous character, in fixing the degree of care required; and we are not satisfied to regard the action of the court in this respect as prejudicial error. See discussion and citations in 9 R. C. L. pp. 1199, 1200.

It results that the judgment of the court below should be, and is, affirmed.