ARTHUR K. TRASK *v.* WILLIAM K. KAM, EXECUTOR OF THE LAST WILL AND TESTAMENT OF TAM SEE, DECEASED (SUBSTITUTED PARTY FOR TAM SEE, DECEASED) AND JAMES K. MURAKAMI, AUDITOR OF THE CITY AND COUNTY OF HONOLULU.

No. 4058.

DECEMBER 3, 1959.

TSUKIYAMA, C. J., MARUMOTO, CASSIDY, WIRTZ AND LEWIS, JJ.

OPINION OF THE COURT BY WIRTZ, J.

The above-entitled case comes before this court on appeal from the judgment entered in the circuit court of the first circuit on November 8, 1957. Since the appeal was perfected, the original defendant-appellant Tam See died and William K. Kam, as executor under the will and of the estate of Tam See, deceased, was, by order of this court substituted in her place. For convenience, however, all references herein to defendant-appellant shall be in regard to Tam See unless otherwise indicated.

Plaintiff-appellee filed an action against defendant-appellant on March 21, 1955, for the sum of $19,000 as and for reasonable attorney's fees with respect to legal services rendered in connection with two parcels of land situate in Manoa Valley, Honolulu, said parcels being designated throughout as parcel 1 and parcel 10, comprising an aggregate of 18,804 square feet. The relationship of attorney and client is undisputed.

The history of defendant's problems in connection with which the plaintiff rendered the services for which he now seeks compensation is as related hereunder.

On August 10, 1943, the City and County of Honolulu, filed as Law No. 17093 in the first circuit, an action for condemnation of parcel 10 belonging to defendant for park and playground purposes, more specifically for a park access road. After a jury-waived trial on April 5 and 6, 1948, the circuit judge adjudged the taking to be for public use but awarded the defendant nothing by way of compensation for the taking, holding that the benefits accruing to defendant's remaining and severed lands were in excess of the value of the land taken. At that time defendant was represented by E. J. Botts, Esq., who charged $300 as and for attorney's fees in connection with the trial. Defendant retained the law firm of Bouslog & Symonds to appeal the judgment. Said firm later withdrew and plaintiff entered his appearance as defendant's new counsel on August 6, 1948.

Plaintiff agreed to appeal the judgment in Law No. 17093 for a fee of $500. Plaintiff does not herein claim compensation for this service, having acknowledged that he was fully paid.

That appeal was docketed number 2721 in this court and on July 8, 1950, this court reversed said decision and judgment and remanded the cause for further proceeding. *City and County v. Tam See,* 38 Haw. 592.

Shortly thereafter followed a period during which plaintiff, as defendant's attorney, sought to arrive at a settlement in Law No. 17093 and conferred on divers and numerous occasions with Nathaniel Felzer, Esq., then a deputy city and county attorney in charge of the case, and others. Mr. Felzer was succeeded in the case by Robert M. Rothwell, Esq., deputy city and county attorney, who filed on July 30, 1952, a new proceeding, being Law No. 22265

in the first circuit court, for the condemnation of not only parcel 10 but also parcel 1, for public highway purposes, as distinguished from park and playground purposes. Under the theory that the filing of this new suit in eminent domain for public highway purposes constituted an abandonment of the taking for park and playground purposes under Law No. 17093, plaintiff, as defendant's attorney, filed on the same day a motion for assessment of damages by reason of the bringing of the suit and subsequent abandonment pursuant to R.L.H. 1945, § 318, now R.L.H. 1955, § 8-25.

This motion for damages in Law No. 17093 was heard in the circuit court commencing September 25, 1952. On December 8, 1952, after a six-day hearing, the circuit judge ruled that defendant was entitled to limited damages by reason of the bringing of Law No. 17093 and the subsequent abandonment thereof and awarded defendant the sum of $800 as damages, $300 for attorney's fee she had previously paid E. J. Botts, Esq., and $500 for attorney's fee she had paid plaintiff in the initial appeal from the decision and judgment in Law No. 17093. The circuit judge further awarded defendant the sum of $500 as attorney's fee for the proceedings before him under the motion for assessment of damages.

During this same period plaintiff, as defendant's attorney, took steps in Law No. 22265 to prevent the City and County of Honolulu, condemnor, from entering upon the land of defendant pending determination of the merits. On September 17, 1952, after hearings on the motion of the City and County of Honolulu to amend its petition in Law No. 22265, the court allowed same and by amended petition, Star Market, Limited, as well as Bank of Hawaii, were made parties defendant.

From the judgment of the circuit judge, limiting damages by holding that subsequent to May 2, 1946, parcel

14

10 was encumbered with easements (decision filed December 8, 1952 in Law No. 17093), defendant appealed to this court where the appeal is docketed as number 2930. This court on October 12, 1953 ruled that there was no easement created over parcel 10 by reason of the deed of defendant to Star Market, Limited, and remanded the case for further proceedings. *City and County* v. *Tam See,* 40 Haw. 429.

This latter opinion in the appeal under number 2930, however, was not rendered until after the circuit court proceeded with Law No. 22265 on December 16, 1952, over the objection of plaintiff, as defendant's attorney, on the ground that the public interest required an early adjudication. After many days of hearings the circuit judge directed a verdict in favor of the City and County of Honolulu and against defendant and Star Market, Limited, awarding one dollar to each as nominal damages for the taking. From the judgment filed January 27, 1953, and the final order of condemnation filed March 18, 1953, in Law No. 22265, defendant took still another appeal to this court with plaintiff perfecting the same. This last appeal was docketed as number 2939 in the records of this court and appears to have been abandoned by defendant subsequent to the termination by her of plaintiff's services.

Shortly after the final order of condemnation was entered in Law No. 22265 and before the decision of this court in number 2930, the City and County of Honolulu gave notice of creation of an improvement district project under which a roadway was to be placed over parcel 10. Defendant objected to this and through plaintiff, her attorney, sought to halt such a project on the ground that there was error on the part of the circuit court in Law No. 22265 in adjudicating the taking for public highway purposes for the sum of one dollar and plaintiff filed in behalf of defendant formal protests against the project

both at the public hearing and at subsequent meetings of the board of supervisors of the City and County of Honolulu.

Meanwhile and since the filing of the opinion of this court in the initial appeal number 2721 decided July 8, 1950 (*City and County* v. *Tam See,* 38 Haw. 592) plaintiff, as counsel for defendant, invited a compromise settlement with respect to the taking of his client's lands which had been pending for seven years then, since August 10, 1943. The deputy city and county attorney then in charge of the matter wrote plaintiff under date of November 9, 1950, which fixes the approximate time when negotiations commenced. These negotiations were temporarily suspended in early 1952 when the city decided to take parcels 1 and 10 of defendant's lands for public highway purposes. Thereafter ensued "a running battle," the city and county attorney seeking authorization from the board of supervisors to proceed with the condemnation of parcels 1 and 10 on the theory that defendant was entitled to only one dollar and plaintiff, on the other hand, trying to convince the supervisors to pay full value as claimed by defendant.

On June 1, 1954, after the ruling of this court in appeal number 2930 (*City and County* v. *Tam See,* 40 Haw. 429), plaintiff, as defendant's attorney, again offered a negotiated settlement with the City and County of Honolulu in behalf of his client. Many letters followed; new offers and counter-offers made; numerous conferences with city officials, attorneys, members of the board of supervisors and of the planning commission, real estate appraisers, engineers, park board officials and others were had.

Finally the board of supervisors of the City and County of Honolulu, by resolution number 625, dated September 27, 1954, made an offer to plaintiff of $38,000 in settlement of all claims. This offer was communicated by plaintiff

to his client with his recommendation of acceptance. Then followed a period of almost six months during which plaintiff sought to convince defendant that the offer should be accepted; but defendant wanted more money.

On February 10, 1955, plaintiff wrote defendant asking for a conference in connection with the offer of the City and County of Honolulu and his fee. Defendant failed to respond to plaintiff's letter and on March 10, 1955, defendant, without plaintiff's knowledge, communicated directly with the chief engineer of the City and County of Honolulu announcing her acceptance of the city's offer, therein requesting that the $38,000 be paid directly to her. Thereupon plaintiff filed this suit for attorney's fees with the issuance of garnishee summons against the city.

From the verdict returned in the court below for the full amount sought by plaintiff in the sum of $19,000 and the judgment entered by the court below in accordance with said verdict, but crediting defendant with the sum of $462.90, defendant has taken this appeal. Defendant-appellant specifies five errors.

Specifications of error numbered one, two and three are related one to the other and all revolve around the question of whether the verdict was excessive and based on bias and prejudice. Specification of error numbered four is dependent upon the determination of the first three specifications of error since it alleges as error that the judgment was erroneously entered, being based upon the improper evidence referred to in specifications of error numbered one and two and upon an excessive verdict encompassed by specification of error numbered three.

On the question of the excessiveness of the verdict raised under specification of error numbered three, the contended grounds are the alleged improper and prejudicial evidence introduced (specifications of error numbered one and two), the testimony of appellee in changing his

fee from $500 to $5,000 for his services in the hearing to determine damages upon the abandonment of Law No. 17093, and the failure of the jury to offset the admitted credit of $462.90 in favor of defendant in reaching its verdict.

A review of the record shows that defendant moved to dismiss at the close of plaintiff's case, moved for a directed verdict at the conclusion of the trial, both of which motions were denied, but did not make a motion for a new trial after verdict. All that appears is that defendant excepted to the verdict as being contrary to the law, the evidence and the weight of the evidence, and gave notice of a motion for a new trial. Thus, it does not appear that the question of the excessiveness of the verdict was ever presented to the trial court, except that the trial court, apparently on its own motion, in entering judgment deducted from the verdict the sum of $462.90, which plaintiff admitted still holding in his accounts to the credit of defendant. From the record it further appears that the trial court was never otherwise called upon to determine whether or not the verdict was excessive for any reason other than this admitted credit in favor of defendant. It is noteworthy that at the time of entry of judgment, counsel for both defendant and plaintiff were present and defendant objected and noted an exception to the entry on the sole ground that the bill of costs was predicated on the total amount of $19,000 rather than on the finally adjusted amount of $18,537.10. In view of the foregoing state of the record it would appear that the question of whether the verdict was excessive or not is not properly before this court since in the absence of a motion for a new trial no question as to excessive damages can be reviewed on appeal. *Murphy* v. *Maui Publishing Co.,* 23 Haw. 804.

"Review of a verdict on the ground of excessiveness rests primarily with the trial court on a motion for new

trial. Appellate review of a verdict on such ground is limited to a consideration as to whether the trial court committed an error of law or abused its discretion in granting or denying a new trial. (*Moore's Federal Practice,* 2d ed., Par. 59.08 [6])" *Pooler* v. *Stewarts' Pharmacies, Ltd.,* 42 Haw. 618.

Even if the question of excessiveness were properly presented for our consideration "[before] we can interfere with the verdict in a case of this nature, we must be satisfied that enough is shown to raise the presumption that the jury acted with prejudice, passion, partiality, or corruption, or that the verdict is so grossly excessive as to shock the moral sense, or that the damages are manifestly exorbitant * * *." *Alau* v. *Everett,* 7 Haw. 82, at p. 85; *Ward* v. *I.-I. S. N. Co.,* 22 Haw. 488; *Vasconcellos* v. *Juarez,* 37 Haw. 364. We find no such basis to hold the verdict excessive in this case. We necessarily fully considered the evidence in connection with the other specifications of error, *infra,* and have had the opportunity to evaluate the reasonableness of the fee claimed and find inevitable the conclusion that, in view of the unusual character of the services rendered, as shown by the record, the amount of the allowance made to plaintiff by the jury did not constitute an unreasonable fee for his services.

Specifications of error numbered one and two assign as prejudicial error the admission, over objection, of testimony of plaintiff dealing with the possible contingent nature of his fee.

Specification of error numbered two relates to the admission of the testimony of plaintiff regarding a contingent fee received by him from William Kam, agent for defendant, in an unrelated matter. This testimony was promptly stricken and the jury instructed to disregard it. Where testimony ruled as improper is stricken with accompanying admonishment to the jury not to consider such evi-

dence, any possible error created by the testimony is cured unless substantial resulting prejudice can be shown. *Territory* v. *Morgenstein,* 39 Haw. 602.

Specification of error numbered one assigns as prejudicial error the admission of the testimony of plaintiff that he expected to "get a fair share of what was won" in answer to the question asked by his attorney as to how he expected to get paid after he had previously testified that "there was no understanding as to how [he] was to be paid." This testimony, although objected to, was never stricken. It was admitted upon the statement of plaintiff's counsel that it would be connected up by later testimony. But when plaintiff's counsel attempted to do so, the connecting testimony was stricken after objection and upon motion to strike. This was the testimony considered under specification of error numbered two, *supra*. After this ruling of the trial court, plaintiff's counsel made no further attempt to introduce connecting testimony. Despite this failure or inability of plaintiff's counsel to connect up the testimony objected to under specification of error numbered one with later testimony, the objection of defendant was never renewed by a motion to strike. An objection to the competency of evidence received on condition of other proof is waived unless later renewed by a motion to strike. *Curcuru* v. *Peninsula Electric Light Co.,* 258 Fed. 785; *Anglo California Nat. Bank* v. *Lazard,* 106 F. 2d 692, certiorari denied in 308 U. S. 624. See annotation in 48 A.L.R. 487 and *cf., Kapela* v. *Gilliland,* 22 Haw. 655 and *Lindeman* v. *Raynor,* 43 Haw. 299.

Even if the striking of a portion of plaintiff's testimony relating to the possible contingent nature of the fee and the instruction to the jury to disregard it, and the failure of defendant to renew her objection by a motion to strike the remainder of plaintiff's testimony on that subject matter, do not cure any error in the admission of such testi-

mony, still "substantial resulting prejudice" to the rights of defendant must be reflected in the verdict. *Berkson* v. *Post*, 38 Haw. 436; see *Anglo California Nat. Bank* v. *Lazard, supra.* In our view the record shows that there was ample and overwhelming evidence upon which to base the verdict and clearly indicates that the admission of the evidence objected to, including the portion thereof later stricken, could not have influenced the final decision of the case to the prejudice of defendant.

The importance, the extent of work involved and the results of the various litigations and negotiations, the difficulties thereof, and the evidence respecting the degree of professional skill, diligence, ability required and exercised by plaintiff were all before the jury for its determination. Practically the entire time plaintiff spent on the witness stand was given to the description and elaboration of such matters. He testified as to his experience in the practice of law. His professional standing was not attacked. His prominence as it affected the importance of the litigation was in evidence. While he had kept no time records, he estimated that he had spent some 2,000 to 3,000 hours in defendant's behalf. The questions of law raised, and the labor necessarily required in the performance of his services, were all presented to the jury. The files of the various litigations and plaintiff's office files and records in connection with services rendered in behalf of defendant were introduced as evidence.

Robert M. Rothwell, Esq., the former deputy city and county attorney who represented the City and County of Honolulu at certain stages of the litigations against defendant, testified as to plaintiff's efforts in behalf of his client and of the complexities and importance of the litigation. He also qualified as an expert witness and said that $25.00 per hour was a reasonable charge for the services of an attorney in Honolulu. He testified that a fee of

$19,000 for plaintiff in the matters he handled for defendant was "eminently reasonable."

Defendant put on only one witness, Eugene H. Beebe, Esq., who testified briefly on general propositions of law concerning attorney's fees. His testimony was not necessarily contradictory to that of plaintiff and Mr. Rothwell, although he did stress the necessity of adjusting a fee to "fruitful" time expended. Other than the inference from Mr. Beebe's testimony as to wasted time and effort on the part of plaintiff in the instant case, no other evidence was adduced by defendant rebutting plaintiff's evidence in support of his complaint.

None of the evidence pointed out by defendant in her specification of error numbered three or in her briefs tends to show that the verdict was in any way based on bias or prejudice or that it was excessive.

The matter of appellee's alleged change of fee from $500 to $5,000 in connection with services rendered in connection with the assessment of damages upon the abandonment of Law No. 17093 was explained during exhaustive cross-examination of plaintiff and the explanation properly left for the consideration of the jury as their sole province to determine this question of fact. The evidence adduced in this connection on cross-examination was largely to discredit plaintiff and disparage his claim. In this, defendant was given a free hand and she assigns no error to any restriction being placed on her conduct of the cross-examination.

As to the fact that the jury in its verdict failed to credit the sum of $462.90 against the amount claimed by plaintiff in his suit (which credit of $462.90 was voluntarily disclosed by plaintiff in his testimony) defendant sought no instruction in this regard. Nor had she pleaded a counterclaim under the Hawaii Rules of Civil Procedure against plaintiff for that amount or for any other amount

claimed by her. Nonetheless, the trial court, in the nature of remittitur, reduced the verdict by that sum in entering judgment.

There is no showing of prejudice to the substantial rights of defendant as to the alleged errors of admission of evidence relating to the possible contingent nature of the fee under suit, a portion of which was promptly stricken. On the other hand, there is substantial and overwhelming evidence supporting the verdict of the jury. The verdict of the jury being supported by substantial and overwhelming evidence, it follows that the trial court properly entered judgment. Specifications of error numbered one, two, three and four are without merit.

There remains only to consider specification of error numbered five that the trial court erred in refusing to give defendant's requested instruction numbered seven.

There is no dispute as to the general proposition of law that in the absence of a contract or statute fixing the amount of compensation, as is the case here, a lawyer performing legal services for his client is entitled to recover the reasonable value of those services. In this connection, the circuit court instructed the jury as follows:

"You are hereby instructed that in the absence of an express contract of employment between an attorney and his client fixing the amount of the attorney's compensation, it is generally held that the attorney is entitled to what his services are reasonably worth, or what has usually been paid to others for similar services. The determination of this depends largely upon the circumstances of the particular case. Among other things to be considered are the importance and the results of the case, the difficulties thereof, the degree of professional skill and ability required and exercised, and the skill, experience and professional standing of the attorney, as well as the amount or values

involved or recovered. The value of the services of an attorney is necessarily to be determined by many considerations besides the time employed in the conduct of a suit in court, including the necessary time and amount of labor performed as indicated by the evidence." (Court's instruction numbered two.)

This instruction was a modification of, although substantially the same as, plaintiff's requested instruction numbered two and is based on the text appearing in 5 Am. Jur., *Attorneys at Law,* § 198, pp. 379-381, and is supported by the cases cited in annotations in 143 A.L.R. 672 and 56 A.L.R. 2d 13. Defendant excepted to the giving of this instruction by the circuit judge but has not specified this as error on appeal.

Defendant, however, did assign as error the refusal of the trial court to give defendant's instruction numbered seven which reads as follows:

"You are instructed that when an attorney undertakes to handle litigation for a client and has no agreement or understanding with the client as to the amount of fees to be charged, he, the attorney, is entitled to make a reasonable charge (as elsewhere considered in these instructions) for his services. If, where there is no specific agreement or understanding as to any specific or contingent attorney's fee, and the attorney makes certain specific charges for certain specific phases of that litigation, the client is entitled to assume, unless otherwise advised by the attorney, that similar charges will be made for any future litigation involving the same subject matter for equivalent services. If the attorney contemplates a substantial change in the amount of fees to be charged for future matters in reference to that litigation, it is the attorney's duty to so advise the client and give the client an opportunity

24

> to object to or reject the attorney's future services and
> hire other counsel."

No authority was cited in support of defendant's contention in this regard although reference was made to *Higgins* v. *J. B. Farnum Company,* 117 A.L.R. 1003, and *Bruce* v. *Dickey,* 116 Ill. 575, 6 N. E. 435, as imposing a duty on an attorney to advise his client of any change of circumstances that might affect the determination of his fee for the services rendered. These cases have no application to the instant situation where defendant was intimately aware of all the circumstances constituting the services rendered, through her agent, William Kam. These cases and the defendant's requested instruction numbered seven assume that the services rendered in the subsequent stages of the litigation and negotiations were substantially the same as those rendered in the initial stages. That such was not the case here was only too well known to defendant.

There was no evidence tending to show that the services rendered by plaintiff in the proceedings on the motion for assessment of damages in Law No. 17093 and in the initial appeal from the trial court's decision in Law No. 17093 (number 2721) were "equivalent" to those rendered subsequently, to wit:

The appeal docketed number 2930 in this court;

The successful efforts to postpone effective date of order of possession in the lower court in Law No. 22265;

The trial on the merits in Law No. 22265;

The numerous appearances before the municipal boards and commissions;

His numerous conferences with appraisers, engineers and municipal officials;

The formal protests against the improvement district project;

The preparation of proceedings in mandatory injunction and prohibition;

The appeal from the final order in Law No. 22265 and in the protection of defendant's right of appeal up to the time of his discharge as her attorney;

The concerted efforts to negotiate a settlement of his client's difficulties during the period November 9, 1950 to March 10, 1955;

Securing the agreement with J. M. Tanaka to fill defendant's low lands to the level of the roadway, thereby enhancing the value of the land; and

Enlarging the area of land owned by defendant by some 7,707 square feet.

Rather than by defendant's requested instruction numbered seven, the jury was properly instructed under the trial court's instruction numbered two quoted above. *Burnett* v. *Graves,* 250 F. 2d 49, 56 A.L.R. 2d 1. In that case, the court held that the failure of an attorney, at the outset of his engagement, to inform his client what his fee would be and to keep detailed time records of services performed on behalf of the client does not estop the attorney from claiming a large fee which the jury, on ample evidence, finds to be reasonable, notwithstanding a smaller fee charged the client for related services. See also *Fraser* v. *Crounse,* 45 A. 2d 757. We find no error in the trial court's refusal to give defendant's requested instruction numbered seven and the giving of the court's instruction numbered two in this case.

In conclusion, as the court in *Burnett* v. *Graves, supra,* in holding that counsel was entitled to a reasonable fee and sustaining the verdict of the jury, so succinctly stated:

"Under instructions submitting the proper standards with a wealth of persuasive, acceptable testimony, they [the jury] have fixed it [the fee]. It is reasonable. It is legal. It is approved."

Affirmed.

*Daniel G. Ridley* for defendant-appellant.

26

*Richard D. Welsh* and *Thomas M. Waddoups* (*Robertson, Castle & Anthony*) and *Arthur K. Trask* (on the brief), for plaintiff-appellee.