No. 9.—THE GEORGIA INSURANCE AND TRUST COMPANY, Plaintiffs in Error, *vs.* JAMES S. OLIVER, Defendant in Error.

The question whether a Garnishee is liable for interest upon the fund in his hands, or the debt owed by him, which is sought to be recovered by process of Garnishment, is not one of strict law, but of discretion, depending upon considerations of equity growing out of the facts and circumstances of the particular case.

When the Garnishee resists the payment of the fund in his hands into court, or controverts his indebtedness, he will be held liable for interest.

It is a general rule, that persons *who are prevented* from paying over money by process of the court, as Summons of Garnishment, Writs of Injunction, and the like, are not liable for interest.

This was an action of Assumpsit tried before Judge Gamble in Richmond Superior Court, January Term, 1846 ; when the plaintiffs in error, who were defendants in the court below, confessed judgment for ten thousand dollars, with interest from 31st of March, 1845, and costs of suit, subject to the opinion of the court whether they were liable for interest and costs, under the following circumstances : " Prior to the commencement of the suit, the plaintiffs in error had been served with summons of garnishment in a number of attachments issued against the defendant in error, who was plaintiff in this cause in the court below ; and that subsequent to the commencement of the suit, like summons of garnishment was served in other attachments." A list of the attachments served, with the time of service, and their amounts, was then set forth in the confession. It is deemed unnecessary to insert them here. Suffice it to say, that the attachments levied anterior to the commencement of the suit, amounted, in the aggregate, to more than the amount of the judgment confessed ; to which attachments it was consented that the amount of the confession should be paid in the order in which they were served.

The action against the plaintiffs in error was predicated upon certain Policies of Insurance effected upon merchandise and other property of the defendant in error, in Wetumpka, in the State of Alabama, against damage or loss by fire, and the insured property lost amounted in value to more than ten thousand dollars, the aggregate of the policies. Notice and proof of which loss was given the plaintiffs in error immediately.

Georgia Insurance and Trust Company *vs.* Oliver.

The suit on the policies was commenced returnable to June Term, 1845, of Richmond Superior Court; at which Term the plaintiffs in error appeared by their attorney, and pleaded "*non assumpsit*," and also a special plea setting forth the facts of the issuing of said attachments against the defendant in error, and of the service of summons of garnishment upon themselves, as above stated, and prayed the judgment of the court whether, &c.

Whereupon the Judge below decided against the plaintiffs in error upon the questions submitted, because they had resisted the payment of defendant's claim under the policies up to the trial Term, upon the ground that it was unjust, notwithstanding they contended that they were prevented from paying under the attachments issued. To which decision of the Judge below, they excepted—

1st. That during the pendency of the attachments against the defendant in error, they should not be liable for interest.

2d. That they ought not to be liable for the costs of the suit, inasmuch as the attachments were a bar to the same while they were pending.

A. J. MILLER, for Plaintiffs in Error.

It is a general rule that a Garnishee shall not be liable for interest, in the absence of fraud, collusion, or neglect to give notice of the attachment to his creditor.— *Sergeant on Attachment*, 108, 166; 2 *Dallas Rep.* 215; 1 *Yeates Rep.* 274; 4 *Mass. Rep.* 170. This case is not within any of the exceptions to the rule—nor does it appear that the Garnishees used the money. They held no money, but were liable on a contract of guaranty. The Garnishments were served before the money became payable; and they could at no time have been safe in paying the money without a judgment being entered against them in favor of the attaching creditor.— 1 *Binney's Rep.* 25; 5 *Eng. C. L. Rep.* 160. They ought not to be liable for the costs of the suit, because the attachments being first in point of time, were a bar to the action.

WM. T. GOULD, for Defendant in Error.

Interest, in suits on policies of insurance, is not a matter of right, but depends on the conduct of the parties.—3 *Binn.* 301. It is therefore, in some measure, *discretionary* with the court to allow it, or not But in this case there is no discretion; for the charter of the plaintiffs in error expressly makes them liable to pay interest, in *all cases.—Prin. Dig.* 410.

In this case the defendants below were not prevented from paying this debt by the attachments levied. They resisted the claim *ab initio*—did not answer the Garnishments—put in a defence in chief, at the first term, and the case, though then in order for trial, by their charter, (*Prin. Dig.* 410,) did not go to judgment till the term after.

The presumption is, in the absence of all evidence to the contrary, that they continued to use the money, which was due the plaintiff below. They made interest out of it, and ought to pay interest for it.

The principle upon which interest is stopped, in cases of foreign attachment, is that the party is prevented, *by act of law*, from paying the money to his creditor. It is not *his fault* that the payment is delayed, for he cannot help it. But where as in the case at bar, he resists the claim, and would not have paid it, even had no attachment been served, the reason for relieving him from interest does not exist. This principle will reconcile all the cases. *See* 9 *Johns.* 71; 10 *Wend.* 97; 1 *Peters C. C.* 321; 8 *Pickering* 267-8.

*By the Court—*LUMPKIN, Judge.

The question of interest is not one of strict law, but of discretion, depending upon considerations of equity, growing out of the facts and cir-

cumstances of each particular case.—*Anonymous*, 1 *Johns. Rep.*, 315; *Pease* vs. *Barber*, 3 *Caines Rep.* 266. In the latter case, Chancellor, then Chief Justice Kent, remarks, " there may be cases in which the defendant ought to refund the principal money only, and there may be other cases in which he ought, *ex æquo et bono*, to refund the principal with interest.

The general proposition contended for by counsel for the company is correct, namely: that persons who are prevented from paying over money, by process of the court, as summons of Garnishment, Writs of Injunction and the like, are not liable for interest.—2 *Yeates*, 280 ; 9 *Wheat. Rep.* 338 ; 4 *Halst.* 3 ; 1 *Peters' Rep.* 524 ; 2 *Dall. Rep.* 102 ; 1 *Call Rep.* 115. It would be unreasonable for the law to forbid a thing being done, and then to mulct the party in damages, in the assessment of interest, for not doing it ; in other words, for not disobeying its own precept. The law works no such injustice, is chargeable with no such absurdity. Indeed, the whole doctrine of interest is based upon the idea that it is a profit, or premium, properly payable, for the use which one man has of the money of another ; or else it is a penalty inflicted for its improper detention. Now, if he cannot pay it, nor employ it, not knowing when he may be called upon by the judgment of the court for its forthcoming, it would be oppressive in the extreme to exact interest. Mr. JEFFERSON, as Secretary of State, put the resistance to the payment of interest, during the war of the Revolution, on our colonial debt, mainly upon the ground that the country, for want of tillage and trade, occasioned by the misconduct of the mother-country, *our creditor*, had produced nothing, and consequently ought not to pay anything.

But how stands the equity of the present case ? Has there been no unjustifiable delay—no delinquency in the Insurance and Trust Company ? Has it occupied the attitude of an innocent stakeholder of the fund in controversy, ready and waiting to discharge the amount due, whenever it should be directed to do so in behalf of the attaching creditors ? And is it fairly to be inferred from the testimony, that the $10,000 lay idle in its vaults from February, 1845, when the first garnishments were served, up to January, 1846, when there was a confession of judgment for the whole amount of the policies ? The fire occurred the last of January, 1845, and the usual notice, it appears, was given immediately thereafter. It is true, they were not compelled by their charter to pay under *ninety* days from the time of furnishing proof of the loss, and interest did not run against them until the expiration of that period ; still there was *nothing* to prevent them from meeting at once their liability.

The history of this transaction, as presented by the record, is this. For certain reasons which appeared satisfactory to the company, no doubt, they early determined to dispute their responsibility. Oliver commences suit on the several policies, to June term of Richmond Superior Court, ensuing the fire. The attachments issuing mostly in the month of April preceding, were returnable to the Inferior, Superior, and Court of Common Pleas. None of the garnishments were ever answered by the company. Had the company insisted on the special plea, filed in bar of the plaintiff's action, to wit, the pendency of the attachments, and been sustained, it would have been forced to depose, either admitting or denying its liability. In the latter event, the affidavits would have been tra-

versed and a trial had thereon.  In these issues, had the company been convicted of the payment of the $10,000, (and it is presumable that such would have been the finding, from the fact that it was finally admitted to be owing,) interest and cost both would have been recovered.   Another and more convenient course seems, however, to have been adopted ; that is, to suffer the garnishments to abide the result of the proceeding instituted by Oliver himself against the company.   That case under the 8th section of the charter stood for trial at the first term, June, 1845.— Prin. Dig., 410.    At that time   nothing   was   done ;   nearly   six months had transpired, and still the company delayed payment on the policies.   At the end of another six months it comes forward, and *without contest* acknowledges its indebtedness for the $10,000, with interest thereon from the 31st of March previously, and *cost :—provided* the court, under the circumstances, should hold it liable for interest and cost. Well, what are these  circumstances, demands the court below, under which you claim exemption from interest on a contract on which it legally attaches ?—2  Hall  Rep., 589 ;  23 Wend. Rep., 525 ;  Prin. Dig., 410. Why, that we were garnished, and *could* not have  paid the principal  if we *would*.    But, replies  the  judge, that  looks very much like an afterthought ;  you have been strenuously resisting the  recovery upon the ground that it was unjust.   If you have been  honest and  in  earnest in this matter, there never was a time when you *would* have paid, if you *could*. You could have discharged  the  demand or most of it, before the bulk of these garnishments were served :  you could have answered these summonses  almost a year ago, and tendered, or offered to  tender the money in court.—3 J. J. Marshall Rep., 68.   You could have confessed judgment to the plaintiff six months before you did.   To the reverse of all this, you have steadily and perseveringly denied owing him anything, down to the present moment :—interest has been accumulating against him all this while in favor of the attaching creditors.   It would be cruel to Oliver to exonerate you from the payment of interest to him, particularly as you have  not shown that you have been  prejudiced by the garnishments—that you had the money ready, and that it had been rendered unproductive by reason of the garnishments.   And as to the cost, resting, like the interest, in the sound discretion of the court, to be awarded upon full view of all the merits of the case, it would seem to be a necessary appendage to the confession of judgment.   If the company was wrong in resisting the recovery, and that is admitted by the confession, the liability for cost would follow, of course.—2  *Hen. and Munf.* 589 ; 2 *Johns. Chan. Rep.*, 166; 1 *Johns. Rep.* 555.   And this direction as to cost conforms to the usual practice in similar cases.—1 *Cox.* (*S. C.*) *Cases,* 357 ;  3 *Brown's  Chancery  Reports,* 297 ;  *Dickens,* 291 ;  6  *Ves.,* 418 ; 9 *Ves.,* 107.   Such was the opinion, in substance, given in the premises, by the circuit judge, in the exercise of the discretion which the law confides to him.   It would require a flagrant abuse of that discretion to warrant the interference of this court.   On the contrary, we believe that it has been used wisely and well.

In the case of the *Delaware Insurance Company* vs. *Delaunie,* (3 *Bin. Rep.* 265,) Tilghman, C. J., says," Interest in all actions like the present is not a matter of course, but depends on the conduct of the parties. *If the defendant has delayed payment improperly he is chargeable with in-*

*terest.*" The ultimate and voluntary confession of the company is a virtual and most substantial admission that the payment of these policies was *improperly* delayed from the beginning. The authority proceeds— " If the defendant offers to pay as much as in justice he ought, and the plaintiff refuses to receive it, and brings an action, it would be wrong that the defendant should pay full interest, after being driven to the expense of defending himself against an unjust suit. But in the present case the fault does not seem to lie altogether on either side. The plaintiff insisted on too much, and the defendant offered too little. There was a necessity therefore for a suit. That being the case, and *there being no reason to suppose that the defendant had not made use of the money, we think he should be chargeable with interest.*" How much stronger than this case is the one under consideration? Here the defendants offered to pay nothing ; denied for twelve months that there was any liability. The fault is *altogether on their side. There was no necessity for a suit.* Instead of there being no reason to suppose that the defendants had not used the money, there is every reason to suppose that they did, inasmuch as they resisted, and, we are bound to conclude, in good faith, the payment of any portion thereof, upon the ground that they were not liable.

In *Welling* vs. *Consequa,* (*Pet. C. C. Rep.* 321,) Mr. Justice Washington says, " When an attachment is levied in the hands of a third person, interest is stopped till it is dissolved, because the garnishee, being liable to be called upon at any moment to pay the debt, it is presumed that he had not used it ; but when a debtor, who is also a creditor, lays an attachment in his own hands, there is no such necessity existing, and of course no presumption can arise that he had not used the money. If he did use it, it is but just that he should pay interest for it."

Can any presumption, we would ask, arise in favor of a garnishee who has never even answered the summons, and who knows, therefore, that he cannot be called upon to pay the money until the preliminary proceedings are first resorted to, which are in fact definitely postponed by agreement, or suffered to slumber, as we gather from the record, until the suit, at the instance of the principal creditor himself, is tried ; against which the garnishee is defending himself, on the merits ?

The points involved in this question are elaborately discussed and examined in *Adams et al.* vs. *Cordis, Trustee, &c.*—8 *Pick. Rep.* 260. There as here, counsel for the *trustee* (corresponding to the garnishee under our law) insisted that interest ought not to be recovered—the fund being *locked up*—by the authority of the law, during the litigation. Chief Justice Parker says, " The first and principal objection to the allowance of interest is, that on the service of the trustee with process, the fund is *locked up* in the hands of the trustee, so that he is prevented by law from paying the debt, and is not at liberty to make any use of the fund ; so that the payment of the interest either to the principal defendant, or the attaching creditor, would be oppressive and unjust. The basis of the argument is undoubtedly sound ; and if the fact corresponded with the legal supposition, the conclusion would be unavoidable. But if this locking up of the *fund is merely a fiction, the trustee in truth making use of it all the time the matter is in suspense, to allow him the benefit of the principal, would be to adopt the shadow for the substance.* To follow up the *metaphor used by the trustee's counsel, the service of the writ turns the key upon*

*the fund, but the trustee keeps the key, unlocks the chest, and takes the money into his own hands. In such case he cannot be allowed to say, " the fund was locked up, and therefore I will pay nothing for it."*

Looking at this case, then, on all sides, we are satisfied, that to allow the Insurance and Trust Company to escape from the payment of interest, would be to give a *legal pretext* to perpetrate a wrong upon an injured creditor.

The presumption is, that the service of garnishments stays the property in the hands of the garnishee, and the law considers that it remains *in statu quo*, until ordered to be paid out by the judgment of the court. But here the counsel for the Company distinctly concedes, that the money was not set apart or deposited : for, says he, " *They held no money, but were liable upon a contract of guaranty.*" In other words, this fund never was carried out, but continued mixed with the rest of their business capital. And if so, both reason and authority are decidedly against them. For, by the charter, whatever doubts might have existed at common law, the policy bears interest from a given date, the same as if a promissory note had been executed for the sum, and the interest becomes the debt as much as the principal after that time, and the Company is bound to pay it, unless the use of the money has been actually, and not fictitiously, hindered by legal process.

Let the judgment of the court below be affirmed with cost.