## IN ADMIRALTY.—JULY, 1856.

EDWARD MOLL and GUSTAVUS REINERS, Assignees of Swan & Clifford, *vs.* BARK "GEORGE," and G. B. POST & CO., intervening.

The Court of Admiralty has power not only to award the possession of a vessel, but also, at its discretion, to award damages for her wrongful detention.

The measure of damages which the owner may recover in such a case is, the interest on the value of the vessel at the commencement of the wrongful detention, and compensation for any deterioration in her value, during such detention.

CHIEF JUSTICE LEE delivered his decision as follows:

On the 12th of March last, a writ of attachment issued out of this court against the whaling bark "George," her tackle, apparel, furniture and outfits, at the suit of the libellants, who filed a claim to recover possession of the same, and damages for her wrongful detention.

At the hearing on the 22d of March, Joseph A. Post, on behalf of himself, G. B. Post and E. H. Allen, known as the firm of G. B. Post & Co., of San Francisco, intervened, and claimed that the said G. B. Post & Co., were rightfully in possession of the vessel; that she was registered in their names, and that they were the true and lawful owners of the same; and their counsel asked for time to procure evidence of their ownership from San Francisco. Accordingly letters rogatory were issued to procure the necessary testimony. On the 14th of June they withdrew their claim, and the counsel for the libellants now moved the court for judgment of possession and damages for the wrongful detention of the said vessel. No objection is made to the motion of judgment for possession, but the counsel for G. B. Post & Co., contends that this court has no jurisdiction to award damages for the wrongful detention of the vessel; and that the libellants should be compelled to seek their remedy for damages in a separate action in another court.

I am clearly of opinion that this court has jurisdiction in this case to award not only possession of the vessel, but damages for its wrongful detention; and that to drive the libellants to a new action for that purpose would be inconsistent with reason, justice, and the law.

"No doubt exists," says Judge Story, "that the admiralty possesses authority to decree restitution of ships, wrongfully withheld from the owners; and if so, it ought to possess plenary jurisdiction over all the incidents." De Lovio *vs.* Boit, 2 Gall. Rep. 398. Jurisdiction of the principal matter carries with it jurisdiction of all the incidents thereto, and we know of nothing more clearly incident to an action for possession of a vessel, than damages for its wrongful detention. Possessory actions in admiralty, to recover ships or other property are analogous to the action of replevin or detinue at the at the common law, (Benedict's Admiralty, Sec 276,) where judgment is given, not only for restitution of the property, but for damages for its detention. It does not follow from this doctrine that damages will be awarded in every case where possession is decreed, for that rests in the sound discretion of the court, which may give damages or not, as justice and the circumstances of the case may require.

In the case of G. B. Post vs. Schooner "Lady Jane," the court decreed possession but refused damages, thinking that none could be justly claimed. Now, how stands this case ? Have the claimants, G. B. Post & Co., shown any good claim or *bona fide* title to the vessel; have they given any good reason for interposing their claim, or for withdrawing the same? I think not. But on the contrary, it appears in evidence that they stated to Captain Brown, in February last, that they had no right, title, or interest whatever in the Bark "George;" and also to Mr. Coady in December last, after the "George" had sailed, that they had no property in the Bark, or claims against her, that they were the registered owners, but merely held her for Swan, because he was a Hawaiian subject, and could not have an American vessel registered in his name. So far as the evidence goes, it does not appear that Post & Co. had the least right or property in the "George," at the time of filing their claim, and I do not see upon what principle of reason or justice they can expect to escape the payment of damages for depriving the libellants of possession.

It now remains to determine what amount of damages the libellants are entitled to recover. It is contended on one side, that the true measure of damages in cases like the present, is the depreciation in market value of the property, between the time of refusing the possession of the same, and the time of rendering judgment for its restitution; while on the other side it is claimed to be simply the interest on the value of the property. I think neither of these rules is right, for it will be seen at a glance, that while the property has really deteriorated in value, and the owner suffered a real loss, yet its market value may have risen. The owner of the property may not wish to sell it, and in such case will it be said that he shall have no compensation for his loss ? If he had made a contract for the sale of the vessel at a certain price, and had been unable to carry out that contract on account of the wrongful detention of the vessel, and had subsequently been compelled to sell her at a less price, the court might award the difference as damages, together with interest. But such is not the present case. Neither is the view that interest on the value of the property is a sufficient compensation, a just one; for in that case the owner would receive no allowance whatever for the injury his property may have sustained. The true rule I believe to be that adopted in cases of replevin, namely, that the plaintiff is entitled to recover, as damages for the detention of the property, the interest on its value and compensation for any deterioration in value of the property during its detention. (Sedgwick on Damages, 502.)

Now, what are the damages as measured by this rule? The value of the vessel at the time of the intervention of Post & Co., has been variously estimated at from $8,000 to $14,000, and from the evidence I think a fair valuation would be $10,000. The interest on which, during the detention, would amount to $276 77. The deterioration of the vessel, her apparel and outfits, during the detention, is not so easily ascertained. We have had a great number of witnesses on this point, and they vary in their estimates any where from $300 to $2000. The average of these estimates is in round numbers $1100. The best evidence on this point, I think, is that of Mr. Holt, Mr. Emmes and Captain Downs, who went on board the vessel, examin-

ed her thoroughly, and who are fully competent to pass upon the question of her deterioration. The average of their estimates is $933 33, and this we decide to be her deterioration. The account will stand then as follows:

| | |
|---|---|
| Interest on value of Ship, - - | $276 77 |
| Deterioration, - - - - - | 933 33 |
| Total, - - - - - | $1,210 10 |

Let judgment be entered in favor of the libellants for possession of the vessel; and also judgment in their favor against G. B. Post, J. A. Post and E. H. Allen, for the sum of $1,210 10, together with the costs arising from their intervention.

Mr. Bates and Mr. Montgomery for libellants.

Mr. Harris for claimant.