CITY AND COUNTY OF HONOLULU, A MUNICIPAL CORPORATION *v.* WILLIAM K. KAM, EXECUTOR OF THE ESTATE OF TAM SEE, DECEASED.

No. 4360.

MAY 25, 1965.

TSUKIYAMA, C.J., CASSIDY, WIRTZ, LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY LEWIS, J.

This is a specific performance suit, filed on February 17, 1960, to secure the carrying out of a compromise agreement between plaintiff and defendant's decedent, which was made in 1955 in settlement of an eminent domain proceeding, as set out in *Trask* v. *Kam*, 44 Haw. 10, 15-16, 352 P.2d 320, 324. Plaintiff hereinafter is referred to as the "City," and defendant sometimes is referred to as the "landowner."[1] Both parties have appealed from the judgment.

The making of the compromise agreement is not contested, nor is that portion of the judgment which requires that defendant execute a deed conveying the two parcels of land involved.[2] The issue is the amount of interest due, if any, under the circumstances hereinafter set out. Defendant filed a counterclaim for the interest.

The claim for interest was based on R.L.H. 1955, § 191-1.[3] The City contests the applicability of the statute,

---

[1] The term "landowner" also will be used at times to refer to defendant's decedent, Mrs. Tam See, who died in 1959. Defendant William Kam, the son of Mrs. Tam See, is the executor of her estate.

[2] Defendant, while willing to execute the deed, argues that no deed was necessary since the eminent domain proceeding, Law No. 22265 in the Circuit Court, First Circuit, went to judgment and final order of condemnation on a nominal award of $1.00 and the appeal therefrom, docketed as No. 2939 in this court, has not been prosecuted. See *Trask* v. *Kam*, *supra*, 44 Haw. at 14, 352 P.2d at 323. This argument has merit in connection with the interpretation of the contract, as seen *infra*.

[3] "Sec. 191-1. *Legal rate; computation.* When there is no express written contract fixing a different rate of interest, interest shall be allowed at the rate of six per cent per annum as follows: (a) for money due on any bond, bill, promissory note, or other instrument of writing, or for

contending that the $38,000, which was to be paid for the two parcels of land, had not become "due" within the meaning of the statute. And under general principles the garnishment prevented the accrual of interest, according to the City's contentions. The landowner supports the ruling of the court below that interest ran from March 10, 1955, but contends that the court erred when it suspended the running of interest on a part of the debt from the date of garnishment, June 22, 1955, it being the landowner's contention that a garnishment does not of itself suspend the running of interest, and that a deposit in court of the money due was required if the garnishment was to have that effect. The landowner further contends that the court erred in the computation of the interest.

The garnishment above referred to was sued out by Arthur K. Trask, the landowner's former attorney, who on March 21, 1955 brought suit for his fees, as set out in *Trask* v. *Kam, supra,* 44 Haw. 10, 352 P.2d 320.[4] What transpired in that suit must be considered in connection with the steps taken to arrive at and consummate the compromise agreement here involved, for an understanding of the present case.

It was on March 10, 1955 that the landowner responded to the City's offer of $38,000.00 as full compensation, made

money lent, after it becomes due; (b) for money due on the settlement of accounts, from the date on which the balance is ascertained; (c) for money received to the use of another, from the date of a demand made; and (d) for money upon an open account, after sixty days from the date of the last item or transaction."

[4] Mr. Trask's claim was for $19,000.00 with interest and costs. Recourse against the garnishee for the interest and costs, as well as for the principal, was a possibility from the inception of the garnishment. From the time of service of garnishee process there was secured in the hands of the garnishee the entire debt then owing by the garnishee, for the payment of such judgment as might be recovered. There also was secured the after accruing interest on the garnisheed debt. *Savings Bank of Danbury* v. *Loewe,* 242 U.S. 357. If the sum so immobilized was deemed excessive resort should have been had to the court for an order releasing part of the garnishee fund. R.L.H. 1955, § 237-1, subsections (a), (d).

on September 27, 1954 by Resolution No. 625 of the Board of Supervisors, as the City Council formerly was called. It is questionable whether March 10, 1955 would be deemed the date when the contract between the City and the landowner was made, if the question was before us. A reply after a lapse of nearly six months ordinarily would not be deemed to constitute acceptance of the City's offer within a reasonable time. Moreover, the letter of March 10, 1955, which the landowner wrote without the assistance of her attorney and behind his back,[5] asked that the City "have a deed drawn for my signature." The method of effectuating the compromise had not previously been specified. But whether or not this constituted a material deviation in terms so as to be deemed a counteroffer for that reason, and irrespective of the landowner's delay in replying to the City's offer, both parties have treated the contract as made on March 10, 1955. We accordingly consider the matter in that light.

The landowner's letter of March 10, 1955 was addressed to the City's Chief Engineer, and had to be transmitted to the Board of Supervisors. This was done on March 22, 1955. On March 29, 1955, the Board of Supervisors adopted Public Works Committee Report No. 1154, reciting that the landowner had accepted $38,000.00 as full compensation, and had requested that a deed be prepared for her signature to complete the transaction. It referred the preparation of the deed to the City and County Attorney,[6] as the Corporation Counsel then was called, and directed that the landowner be informed of the Board's action. The $38,000.00 already had been appropriated.

As was conceded in this court, the City for many years

---

[5] See *Trask* v. *Kam*, *supra*, 44 Haw. at 16, 352 P.2d at 324.

[6] The City and County Attorney, and his various deputies, will be referred to hereinafter as the "City's attorney."

had had possession of the two parcels of land involved in the eminent domain proceeding, and had already improved them for road purposes and put them to public use. Moreover, the City already had obtained a final order of condemnation, and the appeal from the judgment on which it was based[7] necessarily would be abandoned under the terms of the compromise agreement.[8] Upon recording of the final order of condemnation title would pass to the City pursuant to R.L.H. 1955, § 8-24. The appeal, which took the form of an application for and the obtaining of a writ of error under R.L.H. 1955, c. 212, had not abrogated the judgment or final order of condemnation based thereon. *Bertelmann* v. *Kaio*, 23 Haw. 646. While it of course must be borne in mind that the parties agreed that a deed would be given, and indeed, the record shows that the form of deed eventually agreed upon was a warranty deed, it nevertheless is part of the background of the contract that the property was under final order of condemnation. This final order was upon a nominal award of $1.00 which the landowner sought to increase. That was the gist of the matter. When the City agreed to pay $38,000.00 it, to all intents and purposes, already had received the *quid pro quo*.

The landowner's rights were integrated in the contract made on March 10, 1955, so that the statutory and case law generally applicable in determining the right to interest when property is the subject of eminent domain proceedings[9] does not directly apply. *Cf., Albrecht* v. *United States*, 329 U.S. 599. It is R.L.H. 1955, § 191-1, relating to interest on money due on an "instrument of

---

[7] See *Trask* v. *Kam, supra*, 44 Haw. at 14, 352 P.2d at 323.

[8] The appeal in fact was abandoned in 1956.

[9] See R.L.H. 1955, §§ 8-23, 8-31; *State* v. *Coney*, 45 Haw. 650, 372 P.2d 348, *rehearing denied*, 46 Haw. 50, 373 P.2d 903.

writing"[10] which applies. However, the circumstances above set out are pertinent in determining when, under the compromise agreement, the money was to be paid. In that same connection it is noteworthy that the City's attorney was to draw the deed, whereas in the usual case the seller would be responsible for the preparation of the deed.

While the compromise agreement fixed $38,000.00 as the complete amount to be paid, it was contemplated that the matter would be wound up promptly. This appears from Public Works Committee Report No. 3082,[11] which was the basis of Resolution No. 625, adopted September 27, 1954, making the $38,000.00 offer. We conclude that it was the obligation of the City to pay the agreed amount within a reasonable time. Applicable here is the rule that, where there is no provision as to the time for performance, a reasonable time is implied, to be determined upon consideration of the subject matter of the contract, the situation of the parties, what was contemplated at the time the contract was made, and other surrounding circumstances. *Castle* v. *Smith*, 17 Haw. 32, 35; *Magnin* v. *Furgie*, 4 Haw. 467, 470; 17 Am. Jur. 2d, *Contracts*, §§ 329, 330.

We have here a question of interest on a contractual obligation. Such interest, allowed by section 191-1, is also contractual, not by way of damages. *Cf.*, *Bolles* v. *Unna*, 3 Haw. 397; *Tagawa* v. *Trustee in Dissolution Sumitomo Bank*, 43 Haw. 1, 11-12. This falls under the

---

[10] The term "instrument of writing" was construed in *Waialua Agricultural Co.* v. *Oahu Ry. & Land Co.*, 19 Haw. 446, 449-50. It is undisputed that the agreement here involved comes within this term, the dispute being as to the application of the words "money due."

[11] The report analyzed the sum of $38,000.00, recommended as the basis of compromise, showing that it consisted of $23,487.20 as the appraised value of the land, and $14,512.80 as costs and damages of every nature. The report ended: "In the consideration of the many agonizing years suffered by Tam Shee [*sic*] involving this litigation covering period 1943 to include 1954, the prompt settlement of this matter be approved."

general rule that the existing law is part of a contract where there is no stipulation to the contrary. 17 Am. Jur. 2d, *Contracts*, § 257; 17A C.J.S., *Contracts*, § 330. Since the contract was to pay $38,000.00 within a reasonable time the money became "due" after the lapse of a reasonable time, and under the terms of R.L.H. 1955, § 191-1, which must be considered part of the contract, interest was to apply thereafter.

What was a reasonable time for consummation of the compromise? The City was to prepare the deed, but the work required in that connection was negligible. However, the issuance of a warrant by a governmental body requires certain procedures for which time has to be allowed. R.L.H. 1955, § 8-23, by its terms provides for 30 days without interest in which to pay a final judgment in eminent domain, [12] and we regard this as some index of the time required to process such a matter to payment.

On May 11, 1955, the landowner's then attorney wrote the City's attorney enclosing forms of documents (a deed and a general release), and stating that executed originals would be delivered contemporaneously with the receipt of an auditor's warrant for $38,000.00. No complaint was made in this letter as to the time elapsed since the compromise agreement was arrived at on March 10, 1955. Moreover, the landowner, by addressing her letter to the Chief Engineer instead of the Board of Supervisors, thus necessitating the transmittal of the letter by the Chief Engineer to the Board, was responsible for some of the delay.

On May 16, 1955, the City's attorney, without referring to the May 11 letter of the landowner's attorney, wrote the landowner that a deed had been prepared in compliance with Public Works Committee Report No.

---

[12] See *City and County* v. *Caetano*, 30 Haw. 1, 10; *State* v. *Coney*, 45 Haw. 650, 664, 372 P.2d 348, 355.

1154, *i.e.*, the report adopted by the Board of Supervisors on March 29, 1955. This letter asked the landowner to come to the attorney's office as soon as possible to execute the deed. A couple of days after that, according to the undisputed testimony, William Kam, the son of Mrs. Tam See who now, as the executor of her estate, is the defendant in this case, went to see the deputy who wrote the letter of May 16, 1955, and upon inquiry ascertained that the warrant was not ready.

Under all the circumstances, we conclude that the $38,000.00 became due on May 16, 1955. This was the time when all preliminary steps either were or could have been taken to consummate the transaction. The City's attorney, however, merely wrote the landowner to come in to execute the deed. No warrant was prepared at that time. The reason may have been, though the record does not show this, that a garnishment had been attempted. If we assume such reason and give it every possible significance, that does not change the result as developed below.[13]

The City treats its obligation as one to pay on tender by the landowner of an executed deed.[14] On that basis it argues, citing *Bangue Mellie Iran* v. *Yokohama Specie Bank,* 299 N.Y. 139, 85 N.E.2d 906, that the obligation to pay the $38,000.00 was not absolute and unconditional.

---

[13] Though Mr. Trask had filed suit for his fee and had attempted to garnishee the proceeds of the compromise, it is conceded that there was no effective garnishment until June 22, 1955. However, the ineffectiveness of the attempted garnishment is not a decisive point in the conclusions here reached. See the last paragraph of section 237-2, R.L.H. 1955, quoted *infra*, which while not directly applicable, as will be seen, perhaps sets a policy that should be followed of protecting garnishees who have relied on ineffective garnishments the same as if they were effective. In any event, even an effective garnishment would not have relieved the City from the liability for interest while it continued to enjoy the use of the money, as hereinafter set forth.

[14] The City so states the point. Whether a tender by a vendor of real property would have to be in the form of an executed deed need not be decided under our view of the case.

No tender of an executed deed was made until October, 1955, and it was coupled with a demand for a warrant. The City could not have surrendered the warrant at that time, even if it was ready, since an effective garnishee summons had been served June 22, 1955.

We do not interpret the contract as the City does. The whole tenor of the matter, as it finally took shape, was that the City would recognize and promptly meet its obligation to the landowner. It was a compromise of the landowner's claim then in litigation. The City assumed the burden of winding up the matter and was to act first. No tender of the deed was necessary in order for the $38,000.00 to become due under the circumstances of this case. *Cf., Noyes* v. *Brown,* 142 Minn. 211, 171 N.W. 803, explained in *United States Installment Realty Co.* v. *DeLancy Co.,* 152 Minn. 78, 188 N.W. 212; *Piper* v. *Cooper-Atha-Bar Real Estate & Mortgage Co.,* 113 Fla. 327, 151 So. 495; *Wilcox* v. *Commonwealth Realty & Trust Co.,* 248 Mich. 527, 227 N.W. 678, 679, 75 A.L.R. 307, annotated at 316.

As stated in the last-cited case and developed in the annotation thereto:

"* * * [I]t is inequitable to allow the purchaser to enjoy the use of the land * * * and at the same time to let him have the use of the purchase money * * *. The vendor should as a rule have either interest on the purchase money or the rents and profits of the land."

While this is a general rule and is subject to limitations and exceptions, it is a guide in determining the intention of the parties here. The agreed figure of $38,000.00 included compensation for the City's having had both the use of the land and the use of the money in the past, but it was not intended to cover such dual use indefinitely. After lapse of a reasonable time the $38,000.00 became due without a tender by the landowner, and interest com-

menced under R.L.H. 1955, § 191-1.

The contract, as above interpreted, did not deprive the City of protection. Except as affected by the garnishment, the City could have made a tender of the $38,000.00 conditioned on the giving of the deed. *Cf., Johnson* v. *Independent School Dist.*, 189 Minn. 293, 249 N.W. 177; *Heywood* v. *Hartshorn*, 55 N.H. 476. Thus, a debtor entitled to the return of collateral may make a tender of the amount of the debt conditioned on the surrender of the collateral,[15] though the creditor need not tender the collateral[16] in order to hold the debtor on his obligation. We regard the present case as analogous. To the extent that the City has been obliged to pay out money under the garnishment process without the protection of the deed, that is because of the City's acquiescence in the garnishment.[17].

On May 31, 1955 there was prepared a "Summary of Claims" form, or voucher, approved June 8, 1955. As

---

[15] 52 Am. Jur., *Tender*, § 26.

[16] 41 Am. Jur., *Pledge and Collateral Security*, § 99.

[17] Whether there was a garnishable debt in view of the City's right to a deed, became res judicata upon affirmance (44 Haw. 10, 352 P.2d 320, *supra*) of the judgment in Mr. Trask's suit. The landowner, though appealing from the entire final judgment in that case, which included an order for payment by the garnishee of the amount adjudged due Mr. Trask, did not present on appeal any specification attacking the garnishment and made no argument with respect thereto. Previously, through another attorney, the landowner had taken an abortive appeal from the order of August 1, 1955, which held that there was a garnishable debt. This appeal was dismissed October 18, 1955, on the ground that the order of August 1, 1955 was interlocutory and not final. The garnishee appealed from the final judgment, which as above noted included an order for payment by the garnishee, but the garnishee's appeal was dismissed because of acquiescence of the garnishee in the order of August 1, 1955, *i.e.*, the order which was the basis of the judgment against the garnishee. *Trask* v. *Tam See*, 42 Haw. 324, 332.

It is argued by the landowner in the present case that under these circumstances it is conclusively established that the $38,000.00 was "money due" when the garnishee summons was served. Under this argument, the City's acquiescence in the court's determination that the debt was garnishable has the same effect as if the garnishment had been contested by the City and the issue decided against it on the ground that the money was due. Under our view of the matter this point need not be decided.

seen, an effective garnishee summons was served on June 22, 1955. A warrant for $38,000.00 as authorized by the voucher was drawn on November 18, 1955, payable to the landowner, but because of the garnishment was kept in the auditor's office. The landowner was not notified of its having been drawn.[18] On December 27, 1957, the warrant was stamped on its face: "Pay to the Order of Treasurer C & C of Honolulu," which endorsement was signed by the auditor; the money was transferred to the City's garnishment fund.

When the warrant was drawn on November 18, 1955, even though it was not delivered, it had the effect of setting aside the $38,000.00 so that the City had no use of the money for general purposes. Under ordinary fiscal policies of a governmental body, that was the result. The transfer to the City's garnishment fund two years later continued this setting aside of the money in a different form. The question is the effect of garnishment process on a contractual obligation for interest where the garnishee sets aside, but does not deposit in court, the money to pay the garnisheed debt.[19]

It is the City's contention that it was not even necessary that the money be set aside. If the interest here were in the nature of damages the contention would be sustained. It is provided by the last paragraph of R.L.H.

---

[18] See note 23, *infra.*

[19] It is argued that the City is precluded from obtaining any relief from the obligation for interest because it did not comply with the garnishee summons by making the return provided for by R.L.H. 1955, § 237-1(c). However, as seen, by order of August 1, 1955, the sum of $38,000.00 was adjudged a garnishable debt. By the same order, a preliminary injunction was denied "in view of the representation made to the court by garnishee that the terms and provisions of Chapter 212, Revised Laws of Hawaii 1945 [now R.L.H. 1955, c. 237] will be carried out." At the hearing of July 25-26, 1955, preceding this order, the compromise agreement was produced in evidence. Therefore, prior to the setting aside of the money there had been the equivalent of a return containing a disclosure under the statute. We need not decide what the result would be if the garnishee had merely set aside the money without indicating its willingness to pay.

1955, § 237-2, that: "No garnishee shall be liable to anyone for the nonpayment of any sum or for the nondelivery of any goods or effects when such garnishee in good faith believes, or has reason to believe, that garnishment or other process affects the same, though such be not the case * * *." This provision was added by S.L. 1935, c. 155. It applies to a situation which, but for the statute, would be adjudged the unlawful detention of money or property for which damages[20] could be recovered. As set out in the report of the Senate Judiciary Committee on the bill, Stand. Com. Rep. 195, S.J. 1935, p. 892:

> "* * * This bill provides that a garnishee shall not be liable in damages to any person for the nonpayment of any sum due such person * * * when such garnishee believes in good faith or has reason to so believe that garnishment or other process affects the money or property in his hands, though such be not the case."

A fortiori a garnishee is not liable in damages for nonpayment of a sum of money when such nonpayment is due to effective garnishee process.

Here, however, the interest is contractual in nature, and a different situation is presented. So in *Bolles* v. *Unna, supra,* 3 Haw. 397, where by statute an administrator was not liable to suit until the expiration of six months after the grant of letters of administration[21] it was held that interest nevertheless ran during the six months under what was then section 1480 of the Civil Code of 1859, now section 191-1, R.L.H. 1955. The difference between interest by way of damages and contractual interest in garnishment cases is developed in *Adams* v. *Cordis,* 8 Pick. (25 Mass.) 260, 269; *Oriental Bank* v. *Tremont Ins. Co.,* 4 Metcalf (45 Mass.) 1, 10-11; *Work* v. *Glaskins,* 33 Miss.

---

[20] *Cf., Herblay* v. *Norris,* 8 Haw. 335, 337-38; *Moll* v. *Bark "George,"* 1 Haw. 270.

[21] C.C. 1859, § 1247.

539, 544; *Blodgett* v. *Gardiner,* 45 Me. 542, 543; 38 C.J.S., § 180(b) (2) ; Drake, *Attachment,* § 665, p. 573 (5th ed.). True, authority can be found for the City's position that the garnishment in itself stops the interest, at least when the garnishee stands ready to pay. *Powers* v. *Slattery,* 333 Pa. 54, 3 A.2d 780; *Jackson's Executors* v. *Lloyd,* 44 Pa. 82, 84; *Rushton* v. *Rowe,* 64 Pa. 63, 66. Some courts, by presuming the money was set aside to await the results of the garnishment, and by holding such setting aside of the money enough to stop the running of interest, allow interest only when it affirmatively appears that the garnishee did not have the money to pay the debt, or had the use of the money during the pendency of the litigation. *Blodgett* v. *Gardiner, supra,* 45 Me. 542, 543; *Norris* v. *Hall,* 18 Me. 332, 336; *Moore* v. *Lowrey,* 25 Iowa 336, 340-41. We do not deem either of these positions sound. We agree with the view stated in the opinion of Sutliff, J., in *Candee & Scribner* v. *Webster,* 9 Ohio St. 452, 459, that there should be positive proof "of the money being actually held by the party in readiness to be disposed of as directed by the court; and so being in the custody of the law, to be regarded a quasi payment, as if placed on deposit subject to the order of the court." *Accord: Templeman* v. *Fauntleroy,* 3 Rand. (24 Va.) 434, 447.

The principle stated in the above-quoted excerpt is the most fair and reasonable to apply when the interest is contractual in nature. Though payment has been prevented by the garnishee process, this is an incomplete defense. It must further be shown that the garnishee has not enjoyed the use of the money for which he expressly or impliedly promised to pay interest. We do not go so far as to hold that the only way that a garnishee can show that he did not enjoy the use of the money is by depositing it in court, though there is support for that position. *Murphy* v. *Merchants Nat'l Bank,* 240 Ala. 688, 693, 200

So. 894, 898, which should be compared with the earlier case of *Kirkman* v. *Vanlier,* 7 Ala. 217, 230-32; *Work* v. *Glaskins, supra,* 33 Miss. 539, 544; *Stephens* v. *Penn. Casualty Co.,* 135 Mich. 189, 97 N.W. 686; *Ohio Savings Bank & Trust Co.* v. *Loewenstein Realty Co.,* 120 W. Va. 216, 198 S.E. 524; *Long* v. *Johnson,* 74 Ga. 4, which should be compared with the earlier cases of *Little* v. *Owen,* 32 Ga. 20, and *Georgia Ins. & Trust Co.* v. *Oliver,* 1 Ga. 38. In some instances, as can be seen from the cited cases, the explanation of this position lies in a statutory provision for deposit in court by a garnishee. There is *contra* authority that such a statutory provision is not mandatory and does not make a deposit in court the only method of stopping interest. *Moore* v. *Lowrey, supra,* 25 Iowa 336. In any event, we do not have a statute of the type contemplated.

Our garnishment statute makes specific provision for a deposit in court by the garnishee "if it appears that there are conflicting claims to any debt,"[22] with evident reference to claims against the garnishee which present a conflict other than the usual one between the party suing out the garnishment summons and the defendant in the suit. This statute does not establish a rule that a deposit in court is the exclusive method that a garnishee has for stopping interest in the case here presented. *But see Stephens* v. *Penn. Casualty Co., supra,* 135 Mich. 189, 97 N.W. 686.

No doubt a deposit in court could have been effected by the City under H.R.C.P., Rule 67. This ultimately was done as to part of the money, as hereinafter set forth. There is authority that the garnishee is liable for interest even if there is no specific provision for deposit in court by a garnishee, since a deposit always can be made. *Smith* v. *German Bank,* 60 Miss. 69. Such a rule accords the

---

[22] R.L.H. 1955, § 237-9.

garnishment process no significance in itself in stopping interest, requiring a tender,[23] if it can be made by any means. The Massachusetts cases squarely take the position that garnishment process does not stop contractual interest. *Oriental Bank* v. *Tremont Ins. Co., supra,* 4 Metcalf (45 Mass.) 1, 10-11, explaining *Adams* v. *Cordis, supra,* 8 Pick. (25 Mass.) 260, 268-69. We think such a rule does not accord sufficient weight to the fact that the garnishee has been prevented from making the payment which, under the contract, he had the right to make on the due date without interest. When so prevented he has the right to set the money aside and stop the running of interest while the money is held under the garnishee summons.

From the foregoing it follows that interest at the rate of 6 per cent per annum accrued on the sum of $38,000.00 from May 16, 1955, when that sum became due, to November 18, 1955, when it was set aside and interest ceased while it was held under the garnishee process. It may be argued that the $38,000.00 did not become due on May 16, 1955, so as to carry interest from that date, since the City's auditor had been served with garnishee summons on March 21, 1955, though the City itself was not named as garnishee until June 22, 1955 and it is conceded that this later date was the effective date of garnishee process. Even if we give to ineffective garnishee process the same significance in protecting a garnishee as we give to effective

---

23 Under the rule we follow, there is no necessity that the garnishee show an effective tender. Though he must show that the money was set aside, this is from the standpoint of proving that he had no enjoyment of the money during the time he was prevented from making payment by the garnishee process. Since the garnishee is not required to show a tender, he likewise is not required to give notice of the setting aside of the money, at least in the absence of a specific request for such notice. What the situation would be in the absence of a garnishment, if for other reasons the transaction could not be closed and the vendee of real property desired to stop the running of interest, we do not undertake to say. See 55 Am. Jur., *Vendor and Purchaser,* § 352.

garnishee process[24] the argument is not valid. Garnishee process cannot, in itself, prevent a debt from maturing and becoming an interest bearing debt by contract, any more than it can, in itself, suspend a contractual obligation for interest that has started to run. Our holding that no tender of the deed by the landowner was required is decisive of this branch of the case.

On November 8, 1957 judgment was entered in favor of Mr. Trask. According to the minutes of that date, at the time of settlement of judgment counsel for Mr. Trask and the landowner stipulated that "if the Court should have turned over to it from the City and County the money now held by the City and County under garnishment, said money to be deposited with the Court Clerk in lieu of bond, that such money may be invested in a Building and Loan Association instead of being held by the Court, for the benefit of the person to whom the money is finally paid." However, the City made no such deposit, and the landowner made no application that the deposit be ordered.[25]

Mr. Trask's judgment was for $22,174.50,[26] and the City's auditor was ordered to pay that sum to the judgment creditor, Mr. Trask. Mr. Trask thereafter sought to have the auditor adjudged in contempt for failing to pay the judgment. On November 26, 1957 an appeal was taken from the judgment by the garnishee. The landowner already had appealed. At a hearing on Mr. Trask's motion on November 27, 1957, the City took the position it was entitled to a deed, and resisted payment on that ground. The hearing was continued and subsequently, on Decem-

---

24 See note 13, *supra*.

25 See R.L.H. 1955, c. 243.

26 This consisted of $19,000.00 awarded as Mr. Trask's fee, $3,043.32 interest thereon, and $594.08 costs, totaling $22,637.40, less $462.90 remitted because of money of the landowner in Mr. Trask's hands, making $22,174.50.

ber 11, 1957, Mr. Trask's motion was withdrawn without prejudice. It was not further pursued. A stay of proceedings was obtained by the landowner. The City mistakenly took the position that no supersedeas was necessary.[27] The stay remained in effect from December 26, 1957 until January 12, 1960, when the mandate was received affirming Mr. Trask's judgment.[28]

Since the landowner obtained a stay of proceedings, the landowner is not in a position to complain that Mr. Trask's judgment was not promptly paid. However, upon termination of the stay of proceedings the situation changed. The garnishee process no longer held in abeyance the sum of $22,174.50, the amount of the judgment theretofore entered. Under R.L.H. 1955, § 237-12, payment of this amount would have accomplished a discharge of the City's liability to the landowner to that extent. We hold that interest ran on $22,174.50, the amount which the garnishee process no longer held in abeyance, from January 12, 1960 until the payment of this amount on March 17, 1960. Subsequently, on April 4, 1960, an amended judgment was entered ordering payment by the garnishee of the interest on the judgment. Amendment of the judgment evidently was deemed necessary because the original judgment only provided for payment by the garnishee of "the sum of $22,174.50," and did not in terms provide that the garnishee must satisfy the judgment. From and after April 4, 1960 there was nothing to prevent the City from

[27] Under H.R.C.P., Rule 62, there is no automatic stay after the first ten days following entry of judgment.

[28] Although this court decided on February 24, 1958 that the garnishee's appeal must be dismissed the opinion concluded: "However, the garnishee is liable to pay the amount of the judgment, as ordered therein, only in the event that the judgment is affirmed by this court upon consideration of the defendant's [the landowner's] appeal." *Trask* v. *Tam See, supra,* 42 Haw. 324, 334. The judgment dismissing the garnishee's appeal was entered at the same time as the judgment and mandate upon determination of the amount of Mr. Trask's fee in *Trask* v. *Kam, supra,* 44 Haw. 10, 352 P.2d 320.

discharging its entire liability to the landowner by payments either to Mr. Trask or to the landowner directly. The balance due as of April 4, 1960 accordingly carried interest.

On May 5, 1960, the sum of $3,320.90 was paid by the City to Mr. Trask in complete satisfaction of his judgment, and on September 12, 1960, there was a deposit in court of $12,504.60 on the City's motion, leaving an amount still unpaid since the City, in its calculations, provided nothing for interest.

We come now to the application of the foregoing rulings and the computation of interest thereunder.[29] This State follows the general rule that partial payments on an indebtedness carrying contractual interest will be applied "first to the satisfaction of interest due and if, after the payment of interest there is a surplus remaining, then such surplus should be applied to principal and the interest thereafter be computed upon the remaining balance of principal." *Helbush* v. *Mitchell,* 34 Haw. 639, 644. To this rule there are exceptions which derive from the intent of the parties as to the application of the payments. *Nawahi* v. *First Trust Co.,* 30 Haw. 359, 375, 31 Haw. 958, 970. We have no occasion to go into this excepted area because the payments made by the City were not accepted by the landowner, and the landowner cannot be deemed to have acceded to the application thereof solely to principal. *Cf., Cohen* v. *City of Chicago,* 377 Ill. 221, 228, 36 N.E.2d 220, 226. The payments were made under the authority of the judgment in Mr. Trask's suit, or by deposit of the money in court. The courts, under whose authority the

---

[29] We note the City's contention that the landowner preserved no error as to the computation of interest, but do not find it supported.

We also find unsupported the contention that the landowner is barred from claiming interest by the doctrine of waiver, estoppel, or laches, except as hereinbefore stated in considering the effect of the garnishment.

payments were made, must determine their application. Accordingly, the above-stated general rule is applicable.

In summary, interest at the rate of six per cent per annum ran on $38,000.00 from May 16, 1955, when the money became due, to November 18, 1955, when the money was set aside, amounting to $1,152.67. On January 12, 1960, when the mandate came down, this amount of interest had accrued. To this must be added the interest on the sum of $22,174.50, the amount which the garnishee process, after receipt of the mandate, no longer held in abeyance, running from January 12, 1960 to March 17, 1960 when payment was made, making additional interest in the amount of $240.22, so that the interest due on March 17, 1960 was a total of $1,392.89. Thus the payment of $22,174.50 on March 17, 1960 reduced the principal sum owed the landowner by only $20,781.61 ($22,174.50 less $1,392.89), leaving $17,218.39 as the balance of principal. Except for $1,392.89, this sum was set aside and carried no interest until April 4, 1960, the date of the amended judgment, at which point there was nothing to prevent the City from discharging its entire liability. From April 4, 1960 to May 5, 1960, when the next payment was made, additional interest accrued on the $17,218.39 balance of principal. This, together with a small amount of interest on the $1,392.89 not set aside,[30] amounted to $92.89. Accordingly, the payment of $3,320.90 on May 5, 1960 was applicable to principal owed the landowner in the amount of $3,228.01 ($3,320.90 less $92.89), leaving a principal balance of $13,990.38 on which interest in the amount of $300.78 accrued from May 5, 1960 to September 14, 1960, when the deposit in court was made. The deposit

[30] That is, interest must be allowed on the $1,392.89 not set aside from March 17, 1960, the date of the preceding computation, to April 4, 1960, at which date the distinction between money set aside and money not set aside ceased, since there no longer was anything to prevent the City from discharging its entire liability.

in court of \$12,504.60 on September 14, 1960 was applicable to principal in the amount of \$12,203.82 (\$12,504.60 less \$300.78) so that on September 14, 1960 there was due, in addition to the deposit in court, the sum of \$1,786.56 as the balance of principal. This is in contrast with the judgment below that \$4,573.65 was due as interest on that date.[31]

We note further that the judgment below, after ordering defendant to convey the real property involved, provided for payment to the defendant of the amount adjudged due under the contract only "upon delivery to the plaintiff of a deed executed by the defendant in accordance with this judgment, and acceptance thereof by the plaintiff." In short, the judgment below carried no interest after September 14, 1960 for two reasons, the first being that the unpaid balance was deemed interest, and the second being that a tender of the deed was made a condition precedent to recovery of the unpaid balance.

To conform with the views expressed in this opinion the judgment should be completely revised. It should provide for interest on the unpaid balance of \$1,786.56, which is principal, from September 14, 1960 to the date of the new judgment,[32] and should further provide that upon payment or tender of the amount due under the contract, with interest, the City will be entitled to a deed, and the landowner will be entitled to the amount deposited. This will place on the City the burden of making

---

[31] The court below allowed interest on \$38,000.00 from March 10 to June 22, 1955, and after deducting from \$38,000.00 the amount ultimately ordered paid by the garnishee, allowed interest on the balance of \$12,504.50, from June 22, 1955 to September 14, 1960. All payments were applied to principal.

[32] Inasmuch as the judgment entered on January 15, 1963 requires complete revision, that judgment is ordered vacated and a new judgment entered. *Cf.*, *Cowdery* v. *London & San Francisco Bank*, 139 Cal. 298, 73 Pac. 196. The interest computations are to be made accordingly. That is, contractual interest under R.L.H. 1955, § 191-1, will run to the date of entry of the new judgment since the judgment entered on January 15, 1963, will be vacated.

a payment or tender in order to stop the running of interest on the amount of the judgment.

Remanded with directions to vacate the judgment heretofore entered, and enter a new judgment substantially in the following form:

1. That the defendant William K. Kam, Executor of the Estate of Tam See, deceased, is ordered to specifically perform the contract set forth in paragraph 2 of the court's Findings of Facts and Conclusions of Law, to-wit: to convey Parcels 1 and 10 of the real property described in the Complaint filed herein, as provided in paragraph 2, *infra*.

2. In conformity with the opinion of the Supreme Court of Hawaii in No. 4360, October Term 1964, the consideration to be paid for said conveyance, in addition to the amounts heretofore paid on March 17, 1960 and May 5, 1960 pursuant to the garnishment in Civil No. 759, is the amount deposited in court on September 14, 1960, and $1,786.56 as the unpaid balance of principal, together with interest on this unpaid balance of principal from September 14, 1960, to the date of this judgment, entered in conformity with said opinion of the Supreme Court, in the amount of $————, making a total of $————, which is ordered paid to defendant. Upon payment or tender of the aforesaid amount, together with interest accruing on this judgment, if any, plaintiff will be entitled to a deed executed by the defendant in accordance with this judgment, and the defendant will be entitled to the amount deposited in court on September 14, 1960.

*Richard Y. C. Au,* Deputy Corporation Counsel, City and County of Honolulu (*Stanley Ling,* Corporation Counsel, with him on the briefs) for plaintiff-appellant, appellee.

*Sai Chow Doo* for defendant-appellant, appellee.